**In the Interest of M.D.S., A Child.**

**No. 07–98–0149–CV.**

Court of Appeals of Texas, Amarillo.

July 29, 1999.

Jeffrey & Worsham, Daniel A. Worsham, Vernon, for appellant.

Law Offices of Don Ross Malone, Don Malone, Vernon, Underwood, Wilson, Berry, Stein & Johnson, P.C., Christopher K. Wrampelmeier, Amarillo, for appellee.

Before QUINN and REAVIS and JOHNSON, JJ.

PHIL JOHNSON, Justice.

David Perez, Candace Seedig, and Connie Samples, appellants, appeal from two orders in a suit affecting the parent-child relationship. M.D.S. is the child who is the subject of the suit. The first order terminated the parental rights of Seedig pursuant to a voluntary affidavit of relin-

quishment. The second order granted an involuntary termination of the parental rights of Perez, denied grandparent access to Samples, and granted an adoption of M.D.S. to Norma Jan and W. David Worrall, appellees. Appellants assert that (1) the trial court erred in failing to appoint a guardian ad litem to represent the interests of the child; (2) the court erred in finding Perez to be the presumed father of the child; (3) there was no evidence and insufficient evidence to support a finding that Perez committed any of the acts set forth in section 161.001(1) of the Texas Family Code; (4) there was no evidence and insufficient evidence to support a finding that termination of the parent-child relationship between Perez and the child was in the best interest of the child; (5) the trial court abused its discretion in denying Samples grandparent access to the child; (6) the trial court erred in allowing opinion testimony of Greg Tyra regarding the issue of grandparent access; and (7) the trial court erred in allowing the testimony of Dr. Robert Bruce Wurtsbaugh without the witness being properly qualified as an expert witness. We affirm.

## FACTUAL BACKGROUND

M.D.S., a male child (the child) was born on July 24, 1996, to Candace Seedig. On that date, Seedig was 17 years old. Norma Jan Worrall is the biological mother of Seedig, and thus the maternal grandmother of M.D.S. W. David Worrall is Jan's husband and Seedig's step-father. Connie Samples is the biological mother of Perez and the paternal grandmother of M.D.S. Perez and Seedig were not married at any time prior to, during, or after the conception and birth of M.D.S. M.D.S. was born in the Gladney Home in Fort Worth, Texas. The child stayed in the Gladney Home until he was seven weeks old. He then went to live in the home of the Worralls. The child lived continuously with the Worralls after he left the Gladney Home.

On September 5, 1996, Perez signed a statement of paternity acknowledging that he is the biological father of the child. On December 4, 1996, Jan Worrall filed an original petition in a suit affecting the parent-child relationship. Through a series of amended petitions, Jan Worrall ultimately sought the voluntary termination of Seedig's parental rights to M.D.S., involuntary termination of Perez's rights, and an adoption of M.D.S. David Worrall joined in the petition for adoption. Samples filed a petition in intervention seeking to be appointed as a joint possessory conservator of the child. Seedig eventually executed a mother's relinquishment of parental rights and affidavit of status. After a hearing, the trial court rendered an order terminating the parental rights of Seedig on August 27, 1997.

On November 25, 1997, a second hearing was held. Following the hearing the trial court terminated the parental rights of Perez, denied Sample's request for grandparent access, and granted adoption to the Worralls. The trial court signed an order reflecting these decisions on December 9, 1997. Pursuant to various post trial motions, the trial court signed a modified and reformed judgment on January 7, 1998. Included in the modified judgment were findings that Jan Worrall did not have an adverse interest to the child, she would adequately represent the interests of the child, and no attorney ad litem or guardian ad litem for the child was necessary and none was appointed. The court also filed findings of fact and conclusions of law. Among its findings of fact and conclusions of law were findings and conclusions that no guardian ad litem was necessary and none was appointed, that the interests of the child had been adequately represented throughout the proceedings, and that Jan Worrall represented the best interests of the child.

## ANALYSIS OF ISSUES PRESENTED

By their first issue, appellants assert that the trial court erred in failing to appoint an ad litem to represent the interests of the child. They contend that no

hearing was ever held and that no evidence was ever presented on this matter prior to or during the final adversary hearing for termination of the parental rights of Seedig and Perez. Appellants further contend that the trial court's belated finding that Jan Worrall adequately represented the child's interest does not follow the procedure required by section 107.001 of the Texas Family Code. We disagree.

 Section 107.001(a) of the Texas Family Code provides:

> In a suit in which the termination of the parent-child relationship is requested, the court or an associate judge *shall* appoint a guardian ad litem to represent the interests of the child immediately after the filing of the petition but before the full adversary hearing to ensure adequate representation of the child, *unless:*
>
> (1) the child is a petitioner;
>
> (2) an attorney ad litem has been appointed for the child; or
>
> (3) the court or an associate judge finds that the interests of the child will be represented adequately by a party to the suit and are not adverse to that party (emphasis added).[1]

The provisions of section 107.001(a) are mandatory. *Barfield v. White*, 647 S.W.2d 407, 408 (Tex.App.—Austin 1983, no writ). A trial court's failure to comply with section 107.001(a) is reversible error and cannot be treated as harmless because of the serious nature of termination proceedings. *Turner v. Lutz*, 654 S.W.2d 57, 59 (Tex. App.—Austin 1983, no writ).

M.D.S. was *not* a petitioner and no guardian ad litem or attorney ad litem was appointed to represent the child. However, the trial court specifically found that the best interests of the child were ade-quately represented by Jan Worrall, a party to the suit, and that her interests were not adverse to those of the child. While these findings were not in the judgment signed on December 9, 1997, they were included in the final judgment signed on January 7, 1998. Additionally, the court's findings of fact and conclusions of law contained findings and conclusions that the best interests of the child were adequately represented by Jan Worrall and that no guardian ad litem was necessary and, therefore, none was appointed. These findings have not been challenged on appeal.

Because of the findings of the trial court, many of the cases relied on by appellants are distinguishable from the matter before us. In the cited cases, appellate courts reversed where the trial court terminated a parent's rights without appointing an ad litem and without making the finding that an ad litem was unnecessary. *See Arnold v. Caillier*, 628 S.W.2d 468, 470 (Tex.App.—Beaumont 1981, no writ) (trial court did not appoint ad litem nor make separate and independent finding that the child's rights were represented adequately by a party to the suit); *Barfield*, 647 S.W.2d at 408–09 (trial court's finding was inadequate); *Turner*, 654 S.W.2d at 58–59 (no express finding related to the adequacy of child's representation); *Nichols v. Nichols*, 803 S.W.2d 484, 485 (Tex.App.— El Paso 1991, no writ) (no finding and no ad litem appointed); *Chapman v. Chapman*, 852 S.W.2d 101, 102 (Tex.App.— Waco 1993, no writ) (trial court neither appointed ad litem nor found that the interests of the child would be represented adequately by a party to the suit and were not adverse to that party).[2]

---

1. Section 107.001 was amended prior to the filing of this suit. *See* Act of May 25, 1997, 75th Leg., R.S., ch. 1294, 1997 Tex. Gen. Laws 4930 (current version at TEX. FAM.CODE ANN. § 107.001 (Vernon Supp.1999)). The provisions of section 107.001(a) were *not* changed by the 1997 amendments. In any case, the matter before us was filed before the effective date of the amendments.

2. Many of these courts commented that where parents are litigating against one another for the termination of one parent's rights, the trial court can rarely, if ever, make a finding that one party adequately represents the interests of the child and that their interests are not adverse. *See, e.g., Barfield*, 647 S.W.2d at 409. "These cases by their very nature re-

In the instant case, the court's final judgment signed on January 7, 1998, contained such a finding. Additionally, in its findings of fact the court found that the best interests of the child were adequately represented and that there was no necessity for appointment of a guardian ad litem. The statute does not set any time requirement for entry of a written order confirming a finding that a party without interests adverse to the child will adequately represent the interests of the child. Although the judgment, findings of fact and conclusions of law were signed and filed subsequent to the hearings to terminate the parental rights of Seeding and Perez, neither the judgment nor the findings of fact show that the finding was made after the hearings, as appellants would have us assume. In the absence of a record showing that the trial court did not timely make its findings, we will not presume that the trial court failed to comply with the statutory mandate to make his finding prior to any full adversary hearing. We conclude that in the absence of proof or a record specifying otherwise, when the trial court's judgment or its findings of fact in support of the judgment contain the finding that no guardian ad litem or attorney ad litem was necessary because a party to the suit adequately represented the interests of the child and their interests were not adverse, the trial court complied with the mandatory provisions of section 107.001(a). We overrule appellants' first issue.

By their second issue, appellants contend that the trial court erred in finding Perez to be the presumed father of the child.[3] Appellees concede that the trial court erroneously found and concluded that Perez was the presumed father of M.D.S. Appellees assert, however, that the error does not amount to reversible error. We agree with the contention of appellants, but conclude that the error is not reversible.

A man is presumed to be the biological father of a child under certain circumstances set out in section 151.002 of the Texas Family Code. It is uncontroverted that none of the relevant circumstances were established in the instant case. However, in order to be entitled to reversal, appellants must show that such error probably caused the rendition of an improper judgment or probably prevented them from presenting the case to the court of appeals. TEX.R.APP. P. 44.1(a). Section 161.002(a) of the Family Code states that "[t]he procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged biological father."[4] Thus, even if Perez was merely an alleged father as opposed to a presumed father, the same standards applied to the termination of his parental rights. Appellants do not contend that the court applied some other standards than those set out in the Family Code, or that appellants were in any way harmed by the court's error in finding Perez to be the presumed father. Accordingly, we overrule appellants' second issue.

quire the father and mother to litigate their personal interests. There is no party in this type of litigation whose primary duty is to protect the child's interests." *Id.* In the matter before us, we do not have two parents litigating against one another, but rather the similar situation where a grandparent is litigating to terminate the parental rights of a parent. However, appellants have not challenged the sufficiency of the trial court's finding of adequate representation. Consequently, we do not reach that issue.

3. Perez signed a statement of paternity on September 5, 1996, acknowledging being the biological father of the child. The final judgment signed on January 7, 1998, found that Perez was the biological father. No challenge is raised to the judgment determining Perez to be the biological father.

4. Section 161.002 was amended by the Legislature in 1997 prior to the filing of this suit. *See* Act of May 16, 1997, 75th Leg., R.S., ch. 561, § 7, 1997 Tex. Gen. Laws 1983, 1998. Section 161.002(a) was not changed by the 1997 amendments. In any event, the effective date of the changes was September 1, 1997, after this suit was filed.

■ By their third and fourth issues, appellants assert that there was no evidence, and in the alternative, insufficient evidence to support a finding that Perez committed any acts set forth in section 161.001(1) of the Texas Family Code. We do not agree.

■ In order to terminate the parent-child relationship, the trial court must find by clear and convincing evidence that the parent committed one of the acts or omissions set out in section 161.001(1) of the Family Code, and that termination is in the best interest of the child. *See* TEX. FAM.CODE ANN. § 161.001 (Vernon 1996 & Supp.1999). The natural right which exists between parents and their children is one of constitutional dimensions. *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976). Consequently, termination proceedings must be strictly scrutinized. *See In the Interest of G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). A strong presumption exists that the best interest of the child is usually served by maintaining the parent-child relationship. *Id.* at 847. Due process requires the petitioner to justify termination by clear and convincing evidence. *Id.; see also* TEX. FAM.CODE ANN. § 161.001 (Vernon 1996 & Supp.1999). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of allegations sought to be established. *In the Interest of G.M.,* 596 S.W.2d at 847. However, the clear and convincing standard does not alter the rules generally applicable when appellate courts review the sufficiency of the trial court's fact findings. *See In the Interest of R.D.S.,* 902 S.W.2d 714, 716 (Tex.App.— Amarillo 1995, no writ).

■ When presented with legal and factual sufficiency challenges, the reviewing court first reviews the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981) (per curiam). In reviewing legal sufficiency of the evidence on a matter for which the appellant did not have the burden of proof, ·the appellate court considers only the evidence and inferences that tend to support the finding, ignoring all evidence and inferences to the contrary. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). If there is any evidence of probative force to support the finding, the point of error must be overruled. *Id.* In reviewing the factual sufficiency of the evidence, we must· consider all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

A court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that termination is in the best interest of the child and that the parent has committed at least one of the acts listed under section 161.001(1) of the Texas Family Code. TEX. FAM.CODE ANN. § 161.001 (Vernon 1996).[5] In this case, the trial court found by clear and convincing evidence that termination of the parent-child relationship between Perez and M.D.S. was in the best interest of the child, and that Perez committed or omitted to take actions that were in violation of six subsections of section 161.001(1). Among these were findings that Perez engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional· well-being of the child. *See* TEX. FAM. CODE ANN. § 161.001(1)(E) (Vernon 1996 & Supp.1999).

Appellants assert that an alleged or putative father cannot be held responsible for a child's physical and mental well-being prior to that father's acknowledgment of paternity or an actual rendition of a paternity order. Appellants rely on *Djeto v.*

---

**5.** As noted in footnotes 1 and 3, this case was filed prior to the effective date of the 1997 amendments to the Family Code. Our references, therefore, are references to the applicable, pre–1997 statute.

*Texas Dept. of Protective and Regulatory Servs.,* 928 S.W.2d 96 (Tex.App.—San Antonio 1996, no writ) for this proposition. In *Djeto,* the San Antonio Court of Appeals concluded that a father had no responsibility for a child's physical or mental well-being prior to acknowledgment of paternity or the rendition of an order of paternity. *Id.* at 98. In *Djeto* there was no acknowledgment of paternity by the alleged father. The *Djeto* Court held that under the circumstances of that case, the father's acts or omissions prior to the rendition of the paternity order should not have been considered by the trial court for the purposes of termination under 161.001(1)(D). *Id.* The paternity order was rendered on March 22, 1993. The petition for termination was filed by the Texas Department of Protective and Regulatory Services (the department) on July 30, 1993. The child had been in the care and custody of the department from before rendition of the order determining Djeto's paternity. The department was asserting as grounds for termination that (1) Djeto had failed to support the child for a period of one year ending within six months of the date of the filing of the petition, and (2) Djteo had knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *Id.* Given the short time between determination of paternity and the filing of the petition, the bases asserted by the department for termination, and the fact that the department had been in custody of the child since rendition of the determination of paternity, the department conceded that the evidence was legally insufficient to support the finding on endangerment. The date of the paternity rendition and the date of the filing of the petition compelled the court to hold that as a matter of law Djeto could not be in violation of the claimed failure to support the child so as to authorize termination. *Id.*

Appellants at bar recognize that Perez had the duties of a parent once he executed his acknowledgment of paternity on September 5, 1996. *See id.* Jan Worrall's Second Amended Petition was filed on June 10, 1997. The Second Amended Petition was the first pleading to request termination of Perez' parental rights in the child. Termination was requested on the basis that termination was in the best interests of the child, together with other reasons prescribed by section 161.001(1). The section 161.001(1) allegations included a claim that Perez had engaged in conduct that endangered the physical or emotional well-being of the child.

■ We do not find *Djeto* controlling here. Section 161.001(1)(D) requires that before a trial court can terminate parental rights, it must find that a parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." However, section 161.001(1)(E) requires the trial court to find that the parent "engaged in conduct ... which endangers the physical or emotional well-being of the child." Section 161.001(1)(E), therefore, requires only that the parent's conduct endanger the child. A father's conduct prior to the establishment of his paternity can be considered under section 161.001(1)(E). *See, e.g., Clark v. Clark,* 705 S.W.2d 218, 219 (Tex. App.—Dallas 1985, writ dism'd) (father's conduct in killing a stepdaughter prior to conception of child considered as evidence of conduct which endangered the physical or emotional well-being of child); *Allred v. Harris County Child Welfare Unit,* 615 S.W.2d 803, 806 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)(father imprisoned at time child was born and thereafter; conduct before birth considered in conjunction with post-birth conduct supported termination).

The uncontroverted evidence showed that Perez was convicted of the felony offense of burglary of a habitation and at the time of the termination hearing was serving a 15 year sentence. Perez pled

guilty to the burglary charge in exchange for the State dismissing at least one indictment for aggravated sexual assault of a child. The Worralls offered into evidence a written voluntary statement signed by Perez wherein he admitted to having sex with a specific girl at least twenty times beginning in June 1996 before M.D.S. was born and ending in November 1996, after Perez had acknowledged paternity of the child. It was uncontroverted that the girl referred to in the written statement was fourteen years old at the time these encounters occurred. Perez acknowledged that men having sex with children was a type of activity which could endanger the emotional or physical well-being of a child, but he testified that he considered having sex with a fourteen year old excusable because he was "going" with her. He also testified that he had impregnated at least one other woman besides Seedig. Perez was not married to the other woman. Perez also testified that he previously used marihuana and that he had been convicted and confined for possession of marihuana. He agreed that it was pretty routine for him to break the law. He was incarcerated on the burglary conviction in February, 1997. Since being confined he had written letters in which he claimed to have been involved in fights with other prisoners. At the hearing to terminate his parental rights, he testified that his claims of being in fights in prison were fabricated.

 Imprisonment of a parent, standing alone, does not constitute "engaging in conduct which endangers the emotional or physical well-being of the child." *Texas Dept. Of Human Serv. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987). However, it is a factor for consideration by the trial court on the issue of endangerment. *Id.* at 534. If the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under section 161.001(E) is supportable. *Id.* at 534 (citing to prior version of the statute); *see Spangler v. Texas Dept. of*

*Protective & Regulatory Servs.,* 962 S.W.2d 253, 260 (Tex.App.—Waco 1998, no writ) (upholding termination where father abused mother and was frequently in jail); *In the Interest of A.K.S.,* 736 S.W.2d 145, 146 (Tex.App.—Beaumont 1987, no writ) (evidence of father's imprisonment, type of crime for which imprisoned, and father's compulsive conduct of exhibiting genitals to women supported termination).

There is legally sufficient evidence to support the trial court's finding that Perez engaged in a course of conduct which endangered the physical or emotional well-being of the child. Likewise, after considering all the evidence, we conclude that the judgment is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust on the issue of Perez engaging in conduct endangering the child's well-being. Concluding that the evidence was legally and factually sufficient to support at least one of the trial court's findings under section 161.001(1), we need not address the sufficiency of the evidence under each of the contested findings. Appellants' third and fourth issues are overruled.

By their fifth and sixth issues appellants assert that there was no evidence or insufficient evidence to support a finding that termination of the parent-child relationship between Perez and the child was in the best interest of the child. We disagree.

 In order to terminate the parent-child relationship, the trial court must find by clear and convincing evidence that the parent committed one of the acts or omissions set out in section 161.001(1) of the Family Code, and that termination is in the best interest of the child. *See* Tex. Fam.Code Ann. § 161.001 (Vernon 1996 & Supp.1999). In determining whether termination is in the best interests of the child, the trier of fact should consider, if applicable, (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities

of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976). Reviewing the legal and factual sufficiency of the evidence under the standards we have previously mentioned, we conclude that there was sufficient evidence to support the trial court's finding that termination was in the best interest of the child.

At the time of the hearing on termination of the parental rights of Perez, M.D.S. was just over a year old and thus unable to directly express his own wishes. However, Jan Worrall testified that the child acknowledges her as his mother, and he acknowledges David Worrall as his father. Additionally, the social study prepared by Greg Tyra stated that the child appeared well-adjusted and happy in the Worrall home. This evidence was uncontroverted.

Relevant to the second consideration, we note that the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *See Dupree v. Texas Dept. of Protective and Regulatory Servs.,* 907 S.W.2d 81, 87 (Tex.App.—Dallas 1995, no writ). Similar to the parent's situation in *Dupree,* incarceration of Perez makes his future uncertain. The employment status of Perez up to the time of his incarceration was unclear. He testified that his mother "was going to get [him] on" at her employer's business, that he was trying to get a job at Hardee's, and that he "would work" at a cow lot "every Tuesday." He stated that he would try to get a job but "it was hard."

Jan Worrall testified that the Worralls had the economic ability to support the child. Both of the Worralls testified that they had been providing support for the child and that Perez provided them no financial assistance up to the time of the hearing. The court-ordered social study reported that the Worralls owned their residence and maintained it well. The study also showed that Jan Worrall and David Worrall were both employed. David Worrall had been employed for 17 years with the Texas A & M Research and Extension Center.

There was also evidence presented relevant to the parental abilities of the Worralls. Jan Worrall testified that she and David Worrall had five other children. At the time of the hearing one was a college graduate, two were in college, one was about to graduate from high school with plans to attend college, and the fifth was in the seventh grade. David Worrall testified in some detail about their children's academic accomplishments. The social study filed by Greg Tyra noted, as mentioned above, that the Worralls maintained their home well and M.D.S. appeared to be well-adjusted and happy there. There was no evidence presented which questioned or criticized the Worralls' parenting abilities. David Worrall testified that he would like to see the child grow up as a contributing, productive member of society. No evidence was presented to suggest that the Worralls' household was unstable.

The eighth *Holley* factor contemplates the existence of acts or omissions of the parent which may indicate that the parent-child relationship is not a proper one. Jan Worrall testified that Perez never visited M.D.S. and never contributed anything to the support of the child. She stated that Perez never contacted her in an effort to see the child or otherwise inquire about assisting the Worralls with M.D.S.'s care. However, she also testified that on one occasion when M.D.S. was at a hospital, Perez arrived.

Perez testified that he and his mother gave Seedig about $60.00 a week to care for M.D.S., and that he gave the child

some gifts. Perez acknowledged that he ceased giving any money to Seedig over 14 months before the November 1997, hearing to terminate. Perez also admitted to seeing M.D.S. only four or five times after the child's birth, although he was able to see and have sex with a fourteen-year old female on "at least" twenty occasions between June, 1996 and November, 1996.

Finally, Perez offered some explanation for his failure to visit or support the child. He testified that the reason he did not visit or otherwise support M.D.S. was because the Worralls only let him see the child once. He also stated that he stopped seeing the child when Seedig had possession of M.D.S. because he did not want Seedig to be kicked out of the house, but he admitted that he never visited the child after Seedig was kicked out. Additionally, as noted above, Perez claimed to have been seeking employment but "it was hard." Perez was unable to visit the child after February 5, 1997 when he was confined on the burglary conviction.

Reviewing the evidence under the appropriate standards of review and the *Holley* factors, we conclude that there was legally sufficient evidence that termination was in the best interest of the child. Additionally, the trial court's finding that termination was in the best interest of the child is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Appellants' fifth and sixth issues are overruled.

■ By their seventh issue, appellants assert that the trial court abused its discretion in denying Connie Samples grandparent access to the child. Appellants contend that no evidence or insufficient evidence was adduced that would justify the trial court's refusal to follow section 153.433 of the Family Code. We do not agree.

Pursuant to the applicable version of section 153.433, a trial court may order reasonable access to a grandchild by a grandparent if, at the time relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated, access is in the best interests of the child, and at least one of a set of other facts is present. *See* TEX. FAM.CODE ANN. § 153.433 (Vernon 1996). In the instant case, the trial court found that it was in the best interest of the child that Samples be denied grandparent access.

In regard to Samples, the evidence supports the finding of the trial court. Samples testified that she had not attempted to see the child since December 1996, and that prior to that, she saw the child only about four times. Samples admitted that she pled guilty to a felony offense of threatening to have a person hurt in retaliation for their report of sexual assault of a child. Samples was 37 years old, had been married four times, had three children, and had not raised her two oldest children. She did raise Perez, her youngest child. Samples testified that one reason she wanted access to M.D.S. was to allow the child to know Perez as the child's father.

Three witnesses testified that they had known Samples for some period of time and that they felt comfortable leaving their children in her presence or care. However, no witness specifically opined that it was in the best interest of the child for Samples to have access.

We conclude that there was probative evidence to support the trial court's finding that grandparent access on behalf of Samples was not in the best interest of the child. Nor is the finding so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Accordingly, the trial court did not abuse its discretion in denying grandparent access in this case. Appellants' seventh issue is overruled.

■ By their eighth issue appellants contend that the trial court erred in allowing the opinion testimony of Greg Tyra regarding the issue of grandparent access. Appellants contend that Tyra was not

qualified as an expert witness, and that lay witness testimony is not allowed on the question. Appellants failed to preserve error on this issue.

During the direct examination of Greg Tyra, counsel for the Worralls questioned him about his knowledge of Connie Samples. The following exchange occurred:

Petitioner: Do you have an opinion— How long have you known Connie Samples or have you known her before this?

Tyra: No, just since David's trouble.

Petitioner: Did you observe how she reacted to Mr. Perez' charges and to her charges?

Tyra: Yes, sir.

Petitioner: Based upon that, do you have an opinion about whether or not allowing Mrs. Perez access to this child would be in the best interest of the child?

Respondent: Your Honor, I object to the question based on the limited contact that Mr. Tyra has had, I don't think Mr. Tyra could do anything but speculate and there is no basis to make such an opinion.

Court: Overruled.

On appeal, appellants complain that Tyra was a lay witness and that he was improperly allowed to give an opinion on a matter that calls for expertise. *See Leitch v. Hornsby*, 935 S.W.2d at 119 (Tex. 1996). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if the grounds are not apparent from the context of the request, objection, or motion. *See* Tex.R.App. P. 33.1(a); *see also* Tex.R. Evid. 103(a)(1). If a party fails to do this, error is not preserved. *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g). Moreover, failure to object to a witness's qualifi-

cations as an expert fails to preserve error for appeal. *See Hilsher v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 717 S.W.2d 435, 441 (Tex.App.—Houston [14th Dist.] 1986, no writ).

The objection raised below was that Tyra did not have knowledge upon which to base an opinion and that his opinion would be speculation. There was no objection raised to his qualifications to give an opinion. Accordingly, we conclude that appellants have not preserved error as to the issue of Tyra's qualifications. Appellants' eighth issue is overruled.

By their ninth and final issue appellants assert that the trial court erred in allowing the testimony of Dr. Robert Bruce Wurtsbaugh without the witness being properly qualified as an expert. Appellees respond that the proof shows Dr. Wurtsbaugh was properly qualified to give the opinions he gave, but in any event he could offer the opinions as lay opinions. Appellees further assert that appellants failed to preserve error because of an improper objection to Dr Wurtsbaugh's qualifications and because appellants failed to object to his opinions and testimony on other similar matters. Finally, appellees respond that even if admission of Dr. Wurtsbaugh's testimony was error, it is not reversible error. We agree that appellants have not shown reversible error.[6]

At the hearing, counsel for the Worralls questioned Dr. Wurtsbaugh about his profession, educational background, and practice experience. Wurtsbaugh also testified that in forming his conclusions and opinions related to the instant matter, he interviewed nine individuals involved in the case, reviewed an extensive number of correspondences between Perez, Seedig and others, and reviewed some tapes. Counsel then asked Dr. Wurtsbaugh whether he had formed any opinions that would relate to whether it would be in the best interest

---

**6.** Because we conclude that admission of the testimony was not reversible error, if it was error, we express no opinion on the responses of appellees other than the assertion that the admission of the testimony was harmless.

of the child to terminate the parental rights of Perez. Appellants objected as follows:

> Your Honor, at this time I object. In trying to prove up the expert, there was no testimony as to any basis this particular expert has in making such evaluation. I hear he has a psychiatric background and where's he's been, but other than that, I have not heard anything that would form the basis of facts for him making this testimony.

The trial court overruled the objection. Dr. Wurtsbaugh expressed his opinion that Perez met the criteria for and has an antisocial personality disorder and that it would be in the best interest of the child if Perez' parental rights were terminated. Dr. Wurtsbaugh opined that because of Perez' anti-social personality, Perez is a danger to the physical and emotional well-being of the child.

■■■■■ The admissibility of expert testimony is governed by Rule 702 of the Texas Rules of Civil Evidence.[7] The qualification of a witness as an expert is within the trial court's discretion. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex.1996). Rule 702 contains three requirements for the admission of expert testimony: the witness must be qualified; the proposed testimony must be scientific, technical or other specialized knowledge; and the testimony must assist the trier of fact to understand the evidence or to determine a fact issue. Tex.R. Civ. Evid. 702; *see E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995). "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the *specific issue* before the court which would qualify the expert to give an opinion *on that particular subject.*" *Broders*, 924 S.W.2d at 153 (emphasis added). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Robinson*, 923 S.W.2d at 558.

■■ The specific opinions inquired about by the question to which appellants objected concerned whether termination of the parental rights of Perez was in the best interests of the child. Dr. Wurtsbaugh testified that he was a medical doctor and had completed a full residency in psychiatry. He testified that his practice experience was in clinical psychiatry. He did not testify that he had any training or experience with termination of parent-child relationships. Dr. Wurtsbaugh may well have been qualified to give expert opinion testimony in regard to termination of parent-child relationships. This record, however, does not demonstrate those qualifications. In the face of proper challenge, an expert must be proved to have qualification in the specific issue before the court. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 719–20 (Tex.1998) (jet fighter engineer not qualified to give expert testimony on automobile seat belt design).

■■ Nevertheless, even assuming that the trial court erred in allowing Dr. Wurtsbaugh to testify as an expert witness, we conclude that there was no harm in such testimony. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex.1990) (errors in admitting evidence will not require reversal unless that evidence controlled the judgment). If Dr.Wurtsbaugh's testimony were excluded in its entirety, the record contains sufficient evidence to support the trial court's findings that (1) termination of the parental rights of Perez was in the best interest of the child, (2) the conduct of Perez endangered the physical or emotional well being of the child, and (3) denial of Samples' request for grandparent access was in the best interest of the child.

Having overruled each of appellants' nine issues, we affirm the judgment of the trial court.

7. Now the Texas Rules of Evidence.