NO. 07-01-0222-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 19, 2001



______________________________



IN THE INTEREST OF K.B. AND J.B., MINOR CHILDREN


_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO.59,921-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Margaret Baca (1) appeals a bench trial judgment involuntarily terminating
her parental rights to her two minor children, K.B. and J.B. By four points of error, she
contends the trial court erred in finding by clear and convincing evidence that (1) she
engaged in conduct or knowingly placed the children with persons who engage in conduct
which endangers the physical and emotional well-being of the children because the
evidence was legally or factually insufficient, (2) the termination of the parent-child
relationship was not in the best interest of the children because the evidence was legally
or factually insufficient, (3) she knowingly placed or allowed the children to remain in
conditions or surroundings which endanger their physical or emotional well-being because
the evidence was legally or factually insufficient, and (4) she constructively abandoned the
children because the evidence was legally or factually insufficient. Based on the rationale
expressed herein, we affirm.

 Although Margaret's brief does not include a fact statement supported by record
references as required by Rule 38.1(f) of the Texas Rules of Appellate Procedure, in the
interest of justice, we have reviewed the entire record for disposition of this appeal. After
receiving a report of abuse and neglect, the Texas Department of Protective and
Regulatory Services (TDPRS) removed eight-year-old K.B. and two-year-old J.B. from
Benny and Margaret Baca's custody and was appointed temporary managing conservator
on February 25, 1999. Shortly thereafter, on March 10, 1999, TDPRS was appointed
managing conservator and Margaret Baca was given the rights of possessory conservator,
which entitled her to scheduled visitations.

 Prior to being in custody of TDPRS, the children and Margaret Baca had been living
in a one-bedroom hotel room with Margaret's fiancé. (2) During this time, although Margaret
was on probation and had failed two urinalyses tests, she used other rooms at the hotel
to use and deliver drugs. Shortly after TDPRS was appointed managing conservator of
the children, Margaret was offered the opportunity to participate in a Substance Abuse
Felony Treatment Program, but refused. TDPRS then developed a service plan in an
attempt to reunite the children with Margaret, whereby she would find employment,
maintain proper housing for the children, and attend a parenting class. On seven of
Margaret's visits with the children, she was provided with a written copy of the plan and
oral explanations. However, even though she was informed that the services were free,
she made no effort to comply with the plan and failed to attend several scheduled
appointments. Margaret's visits with her children became sporadic. She consistently
arrived late or did not attend at all. In response, TDPRS changed the visitation schedule
from one time per week to every other week. After December 1999, Margaret no longer
attended any scheduled visits with her children. Due to this lack of visitation and other
observations, TDPRS caseworkers testified, without objection, that it would be in the best
interest of the children to terminate the parent-child relationship as to both parents.

 In its judgment, the trial court made the following three findings as grounds for its
conclusion that termination of the parent-child relationship was justified:

 1. knowingly placed or knowingly allowed the children to remain in
conditions or surroundings which endanger the physical or emotional well-being of the children; 


 2. engaged in conduct or knowingly placed the children with persons who
engaged in conduct which endangers the physical or emotional well-being
of the children; and


 3. constructively abandoned the children who have been in the permanent
or temporary managing conservatorship of the Department of Protective and
Regulatory Services or an authorized agency for not less than six months
and: (1) the Department or authorized agency has made reasonable efforts
to return the children to the parent; (2) the parent has not regularly visited
or maintained significant contact with the children; and (3) the parent has demonstrated an inability to provide the child with a safe environment. 

 The natural right existing between parents and their children is one of constitutional
dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination
proceedings must be strictly scrutinized. In Interest of G.M., 596 S.W.2d 846, 846 (Tex.
1980). A termination decree is complete, final, irrevocable, and divests for all time that
natural right as well as all legal rights, privileges, duties, and powers with respect to each
other except for the child's right to inherit. Holick, 685 S.W.2d at 20. In proceedings to
terminate the parent-child relationship brought under section 161.001 of the Family Code,
the petitioner must establish one or more acts or omissions enumerated under subsection
(1) of the statute, and must additionally prove that termination of the parent-child
relationship is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon
Supp. 2001). Both elements must be established, and proof of one element does not
relieve the petitioner of the burden of proving the other. See Holley v. Adams, 544 S.W.2d
367, 370 (Tex. 1976). 

 Because termination of parental rights is of such weight and gravity, due process
requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam.
Code Ann. § 161.001 (Vernon Supp. 2001); In Interest of G.M., 596 S.W.2d at 847. This
standard is defined as that measure or degree of proof which will produce in the mind of
the trier of fact a firm belief or conviction as to the truth or the allegations sought to be
established. Id. Although the clear and convincing burden of proof required at the trial
level is well settled, appellate courts have struggled to reconcile this burden of proof with
the standard for appellate review of the sufficiency of evidence. As this Court has
previously noted, the clear and convincing standard does not alter the rules generally
applicable when appellate courts review factual findings. In Interest of M.D.S., 1 S.W.3d
190, 197 (Tex.App.-Amarillo 1999, no pet.).

Standards of Review--Legal and Factual Sufficiency of the Evidence

 When presented with a challenge to the legal sufficiency of the evidence, the
reviewing court must consider all of the evidence in a light most favorable to the party in
whose favor the finding was rendered indulging every reasonable inference in that party's
favor. Associated Indem. Corp. v. Cat Contracting, 964 S.W.2d 276, 285-86 (Tex. 1998). 
If there is any evidence of probative force to support the finding, the finding must be
upheld. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). In
reviewing a challenge to the factual sufficiency of the evidence the court must consider,
weigh, and examine all of the evidence of record. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). The court should only set aside a finding if the evidence
which supports the finding is so weak as to be clearly wrong and manifestly unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 In the present case, the trial court ordered termination under sections
161.001(1)(D), (E), and (N) of the Family Code. These subsections provide for termination
if the court finds by clear and convincing evidence that the parent has:

 (D) knowingly placed or knowingly allowed the child to remain in conditions
or surroundings which endanger the physical or emotional well-being of the
child;

 (E) engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being
of the child;

 (N) constructively abandoned the child who has been in the permanent or
temporary managing conservatorship of the Department of Protective and
Regulatory Services or an authorized agency for not less than six months,
and:

 (i) the department or authorized agency has made reasonable
efforts to return the child to the parent.

 (ii) the parent has not regularly visited or maintained
significant contact with the child; and

 (iii) the parent has demonstrated an inability to provide the
child with a safe environment.


Tex. Fam. Code Ann. § 161.001(1)(D), (E) & (N) (Vernon Supp. 2001). The Code also
requires that termination be in the best interest of the child. § 161.001(2) (Vernon Supp.
2001). In sum, a finding of a violation of either sections (D), (E), or (N), and a finding that
termination is in the best interest of the child will support a judgment terminating the
parent-child relationship. 

 We will first consider Margaret's fourth point, which challenges the legal and factual 
sufficiency of the evidence that she constructively abandoned her children in temporary
or permanent managing conservatorship of the TDPRS. In order to involuntarily terminate
parental rights under section 161.001(N), the evidence must show : (1) the child has been
in the permanent or temporary managing conservatorship of TDPRS for not less than six
months; (2) the department has made reasonable efforts to return the child to the parent;
(3) the parent has not regularly visited or maintained significant contact with the child; and
(4) the parent has demonstrated an inability to provide the child with a safe environment. 
In re D.T., 34 S.W.3d 625, 633 (Tex.App.-Fort Worth 2000, pet. denied).

 On March 10, 1999, after a brief period as temporary managing conservator,
TDPRS was named permanent managing conservator. At the time of the hearing in
January of 2001, TDPRS had been the temporary or permanent managing conservator for
at least six months, meeting the requirements of the first element. Element two requires
that the department make reasonable efforts to return the children. From February 17,
1999 until October 22,1999, the first case worker for TDPRS attempted to return the
children by creating a service plan which detailed the requirements that Margaret should
complete in order to have her children returned. Margaret was given seven copies of the
plan, each with an oral explanation. The case workers testified that TDPRS had made
more than sufficient efforts to return the children and that Margaret made no effort to have
the children returned. Margaret never completed the service plan even after she was
informed that the services were scheduled and paid for and all she had to do was keep the
appointments. Included in the service plan was an assessment to be completed by Leta
Acker. Acker contacted the case worker for TDPRS and stated she would no longer work
with Margaret because she had missed two four-hour scheduled assessments. From this
evidence, the trial judge could have concluded that the department made reasonable
attempts to return the children as required by the second element.

 The next element of constructive abandonment is that the parent has failed to visit
or maintain regular contact with the child. Margaret was incarcerated in April 2000 and
remained in jail at the time of the hearing. We recognize this period alone is not sufficient
to establish constructive abandonment, id. at 634; however, before she was incarcerated
Margaret did not regularly visit the children. When the children were taken into custody,
Margaret was allowed weekly visits. She began to miss visits and arrive thirty to forty-five
minutes late when she did attend. TDPRS then changed the visitation schedule to every
other week. Margaret's visitation was sporadic and in December 1999, she admittedly
made her last visit four months prior to her incarceration. The only contact Margaret
claims occurred after this date is through her sister. The trial judge could have found that
Margaret did not regularly visit her children.

 The final element necessary in finding constructive abandonment is failure to
provide the child with a safe environment. In her brief, Margaret admits that she "made
error in judgment and has on isolated occasion engaged in conduct that she regrets." 
Further, soon after Margaret's children were placed with TDPRS, she was asked to
complete a Substance Abuse Felony Treatment Program as an alternative to incarceration
for probation violation, but she refused and was incarcerated. As a result of her failure to
utilize treatment, the children remained in the custody of the TDPRS while she was
incarcerated. Margaret also failed two urinalyses while she was on probation. 
Accordingly, her violation of the terms of her probation created an unsafe environment for
her children and we conclude that evidence is legally and factually sufficient to establish
that Margaret constructively abandoned her children. Margaret's fourth point of error is
overruled.

 By her second point of error, Margaret contends the evidence was legally and
factually insufficient to support a finding that termination was in the best interest of her
children. (3) Factors to be considered when making the determination as to whether
termination is in the child's best interest include: the desires of the child, the emotional and
physical needs of the child now and in the future, the emotional and physical danger to the
child now and in the future, parenting abilities, acts or omissions indicating the existing
parent-child relationship is not a proper one, and any excuse for the acts or omissions. 
In Interest of B.S.T., 977 S.W.2d 481, 485 (Tex.App.--Houston [14th Dist.] 1998, no pet.). 
Without any objection, the two case workers for TDPRS testified that in their opinion, 
termination of parental rights was in the best interest of the children and that the children
expressed desires to be adopted and live in new homes. Because evidence of a parent's
history, admissions, and conduct relating to drug abuse, and her inability to maintain a
lifestyle free from arrests and incarcerations is also relevant to a best interest
determination, see Holley, 544 S.W.2d at 370, the evidence establishing that Margaret
violated probation, refused drug treatment, and used and delivered drugs can also be used
to support the court's finding. We therefore conclude that the evidence was legally and
factually sufficient to support a finding that termination was in the best interest of the
children. Margaret's second point of error is overruled. Our disposition of points of error
two and four pretermits consideration of points one and three. Tex. R. App. P. 47.1.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


Do not publish.
1. Although the order also terminated the parental rights of the father, he did not
appeal.
2. Not the natural father.
3. TDPRS contends that Margaret waived this point by failing to cite to authorities to
support her proposition. However, the Supreme Court's policy is to construe the Texas
Rules of Appellate Procedure liberally so that decisions turn on substance rather than
procedural technicality. Motor Vehicle Bd. of Tex. v. EPIADA, 1 S.W.3d 108, 111 (Tex.
1999). Thus, because termination of parental rights is a right of constitutional dimension,
we will consider Margaret's contention. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).