**Opinion filed September 2, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00296-CV

_____

## IN THE INTEREST OF J.M.D., A CHILD

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM 47,895**

## MEMORANDUM OPINION

This is an accelerated appeal of the trial court's order terminating parental rights. We affirm.

### I. *Background Facts*

Appellant is the father of J.M.D. C.R. is the mother of J.M.D. and M.L.R.[1] M.L.R. was removed from C.R.'s care when she and appellant left M.L.R. in a motel by herself while they went to Odessa. M.L.R. was ten years old at the time. On the way to Odessa, appellant was stopped by police and was arrested for an expired driver's license. C.R. was later arrested for child endangerment. J.M.D. was born while C.R. was incarcerated, and she was placed in the custody of the Texas Department of Family and Protective Services. J.M.D. was placed in foster

---

[1]D.M.M. is the father of M.L.R. and his rights were terminated, but he is not appealing that order and is not a party to this appeal. C.R.'s rights were terminated as to both J.M.D. and M.L.R. She also is not a party to this appeal.

care with Lee and Laronda Shirley three days after she was born. J.M.D. was sixteen months old at the time of trial.

The Department filed a Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting Parent-Child Relationship. In the petition, the Department alleged seven acts or omissions as the basis for terminating appellant's parental rights to J.M.D. The trial court held a bench trial pertaining to the termination. At the conclusion of the trial, the court found that termination of appellant's parental rights was in the best interest of J.M.D. and that appellant had:

> 8.2.1. engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> 8.2.2. constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the father; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment;
>
> 8.2.3. failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

## II. *Issues on Appeal*

Appellant asserts that the trial court's order finding that he has endangered J.M.D., constructively abandoned J.M.D., or acted in violation of the court's orders was not supported by legally and factually sufficient evidence. Appellant also asserts that the trial court's finding that termination was in J.M.D.'s best interest was unsubstantiated by clear and convincing evidence.

## III. *Standard of Review*

Due process requires that the grounds for termination be established by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This requires a measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.).

To determine if the evidence is legally sufficient, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d at 292. We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 817 (Tex. App.— Eastland 2004, no pet.). We must consider all the evidence, not only that which favors the verdict. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

To determine if the evidence is factually sufficient, we review the entire record, including evidence in support of and contrary to the judgment, and give due consideration to evidence the trial court could have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We then determine whether the evidence is such that a factfinder could form a firm belief or conviction that grounds for termination exist. *Id.* We also consider whether any disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.*

IV. *Grounds for Termination*

A court may order the termination of the parent-child relationship if it finds by clear and convincing evidence that a parent has engaged in conduct or knowingly placed the child with a person who engaged in conduct which endangered the physical or emotional well-being of the child. TEX. FAM. CODE. ANN. § 161.001(1)(E) (Vernon Supp. 2009). Endanger means to expose to loss or injury or to jeopardize a child's emotional or physical health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). The conduct must be more than a threat of physical injury or the possible ill effects of a less-than-ideal family environment. However, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Id.*

The cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. *Doyle*, 16 S.W.3d at 395; *In re S.H.A.*, 728 S.W.2d 73, 83-84 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). The conduct to be examined includes what the parent did both before and after the child was born. *Dupree v. Tex. Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.— Dallas 1995, no writ). Additionally, termination must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). Imprisonment is a

factor to consider on the issue of endangerment. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). However, imprisonment by itself it is not enough to constitute engaging in conduct that endangers the emotional or physical well-being of the child. *Id.* at 533-34; *In re M.D.S.*, 1 S.W.3d 190, 199 (Tex. App.—Amarillo 1999, no pet.). On the other hand, if the evidence, which includes imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding of endangerment is supportable. *Boyd*, 727 S.W.2d at 533-34; *In re M.D.S.*, 1 S.W.3d at 199. Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re A.J.H*, 205 S.W.3d 79, 81 (Tex. App.—Fort Worth 2006, no pet.).

Appellant was incarcerated at the time of trial and for a large portion of the case. He was arrested in Odessa for driving with an expired driver's license in March of 2008. In May 2008, one month after J.M.D.'s birth, appellant was arrested in Sweetwater for unauthorized use of a motor vehicle and was in jail until September 2008. In February 2009, appellant pleaded guilty to unauthorized use of a motor vehicle and received a fifteen-month sentence. Appellant testified that he has spent "quite a bit" of his life in jail. He has a criminal history in Kentucky for theft, theft by deception, and forgery by passing. Appellant has been arrested in Texas for driving with an expired driver's license and unauthorized use of a motor vehicle. Appellant testified that he has "had about eight or ten expired licenses."

Jerry Watts testified that he is an assistant jail administrator and jail sergeant for the Nolan County sherriff's office. He testified that appellant was in the Nolan County jail from May 2008 to September 2008. Watts testified that, while appellant was in jail, he received disciplinary lockdown for disrespect of staff, terroristic threat, fire in his cell, and violent behavior. Watts testified that appellant became angry when he was unable to control the situation in his environment and would break into a rage.

Appellant testified that, when he was not incarcerated, he was in continuous contact with the Department. He testified that he signed a service plan while he was in prison and that he was aware that the Department was requesting that he participate in certain services offered by the Department. Appellant was not incarcerated from September 2008 through February 2009. During that time period, he failed to participate in any of the services offered by the Department. Appellant stated that he failed to perform any services because he was not required to do them until after taking a DNA test to confirm paternity. Appellant's DNA sample was taken on November 18, 2009, and the results were returned January 28, 2010. However, once the DNA test confirmed that appellant was J.M.D.'s father, he still did not initiate services. Appellant was

4

signed up to take a parenting class but he refused to take it because he did not know what it was for. Appellant testified that he did not think that he needed to take a parenting class. Appellant had not taken a parenting class at the time of trial but his name was on a waiting list. Appellant admitted he was not be able to take care of J.M.D. at the time of trial. He further testified that he had not provided any financial support for J.M.D. and that he was behind in child support for his other children.

Joanna Petrov testified that she is a supervisor for the Department. She testified that appellant signed a service plan and the services were explained to him by a caseworker. She further testified that appellant only completed one of the services in his plan, the parenting packet. Petrov stated that appellant's own actions delayed the DNA test because appellant did not give the Department a proper address where he could be served. Appellant gave the address of Joe Cook Small Engine Repair out of Odessa. When someone from the Department tried to serve appellant, they were told that appellant did not work there. Appellant testified that officially he did not work there because he did not have a valid driver's license. Petrov testified that appellant had listed his address as "general delivery" in Sweetwater, Texas. In order for the Department to order a DNA test, appellant had to provide a physical address. Petrov testified that appellant did not provide locating information even though he was asked numerous times. Petrov also testified that appellant's conduct endangered J.M.D. She testified that appellant repeatedly made bad choices that put him in prison. Because of these choices, appellant was not able to provide J.M.D. with a safe and stable environment.

Mallori Mangus testified that she is a licensed professional counselor in private practice who contracts with Hope for Tomorrow to provide counseling to children. She was qualified as an expert witness by the trial court. She testified that she began seeing M.L.R. as a patient in July 2009. Mangus testified that M.L.R. made an outcry of sexual abuse against appellant. She also testified that M.L.R. expressed feelings of anger and hatred toward her mother and appellant. Mangus testified that M.L.R. told her that her mother and appellant used drugs in front of her. Illegal drug use and sexual abuse are conduct that endangers a child's physical and emotional well-being. *In re L.C*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.); *In re D.C.*, 128 S.W.3d 707, 716 (Tex. App.—Fort Worth 2004, no pet.). Evidence of abuse of one child is sufficient to support a finding of endangerment to another child, even when the child is unborn at the time of the abuse. *In re King*, 15 S.W.3d 272, 276 (Tex. App.—Texarkana 2000, pet. denied).

Appellant denied ever sexually abusing M.L.R. He testified that he had "a pretty good idea" as to why M.L.R. would make those accusations. He notes that Mangus never reported the sexual abuse allegation to the authorities. She assumed that the Department had notified the authorities. Appellant further notes that the State did not file charges of sexual abuse against appellant and that M.L.R. was not interviewed by the child advocacy center. Mangus testified that she did not believe M.L.R. had been coached and that her story had been consistent throughout her sessions. The trial court conferred with M.L.R. in chambers and was able to observe her demeanor and appearance and determine her credibility.

Applying the standards set out above, we find that the evidence is legally and factually sufficient to support the trial court's finding of endangerment under Section 161.001(1)(E). Appellant was incarcerated at the time of trial and during most of the course of this case. He admitted that it was his fault that he was in jail, that he continually drove without a valid driver's license, and that he knew he might be arrested. The trial court could have also considered the allegations of sexual abuse and drug use. The trial court is the judge of the witnesses' credibility. It could have resolved the conflicting evidence in favor of Mangus and M.L.R.'s testimony and chosen to disbelieve the testimony of appellant. Because there is legally and factually sufficient evidence of endangerment and because only one finding alleged under Section 161.001(1) is necessary to establish grounds for termination, *In re D.M.*, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no pet.), we do not need to discuss the other findings the trial court made as grounds for termination. We overrule appellant's first issue on appeal.

V. *Best Interest of a Child*

In parent-child termination proceedings, there is a strong presumption that the child's best interest is usually served by keeping him with his natural parents. *In re D.M.*, 58 S.W.3d at 814; *In re K.C.M.*, 4 S.W.3d 392, 393-95 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Best interest does not require proof of any unique set of factors. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). However, the Texas Supreme Court has recognized several factors to consider in determining whether termination is in a child's best interest. *Id.* These include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not proper; and

6

(9) any excuse for the acts or omissions of the parent. *Id.* at 371-72. This list of factors is not exhaustive, and no single consideration is controlling. *In re D.M.*, 58 S.W.3d at 814.

A. *The Desires of the Child.*

The emotional bond between the child and the parent may be considered when determining the best interest of the child. *In re C.N.S.*, 105 S.W.3d 104, 106 (Tex. App.—Waco 2003, no pet.). When the child is too young to express a preference, other evidence regarding the child's current placement is relevant. *See In re M.D.S.*, 1 S.W.3d at 200 (evidence that child acknowledged her foster parent as her mother and was well-adjusted and happy in her foster home was sufficient to find in favor of the Department on this factor). Appellant has never seen J.M.D. and has not established an emotional bond. At the time of trial, J.M.D. was sixteen months old and had lived with the Shirleys since she was three days old. Petrov testified that J.M.D. thinks that the Shirleys are her parents and that they are the only family she knows.

B. *The Emotional and Physical Needs and the Emotional and Physical Danger to the Child Now and in the Future.*

A parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct can be considered when looking at the best interest of a child. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). Appellant testified that he was convicted of passing bad checks, theft by forgery, and theft by deception. He was also serving prison time for unauthorized use of a motor vehicle at the time of trial. Appellant has used poor judgment in the past and repeatedly acted immorally. Appellant has not provided any evidence as to how his conduct will change if able to maintain his parental rights to J.M.D. Appellant testified that he did not believe that he needed to take a parenting class and that he did not believe that it was emotionally damaging to a child for a parent to be in and out of prison. Appellant also testified that as of the date of trial, he was not able to provide a home for J.M.D. An inference may be made that a parent's past inability to provide for a child's physical and emotional needs may indicate an inability to provide for those needs in the future. *D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 356 (Tex. App.—Austin 1993, no writ). Appellant's testimony gives every indication that his previous conduct would continue because he did not believe that it was harmful to J.M.D.

C. *The Parental Abilities of the Individuals Seeking Custody.*

There is no evidence of appellant's parental abilities because he has never seen J.M.D. Appellant refused to take the parenting class when offered to him initially and had not taken parenting class at the time of trial. He also testified that he did not believe that he needed to take

a parenting class. Appellant has not provided any financial support for J.M.D. and is behind in the child support owed for his other children.

Lee and Laronda Shirley are seeking to adopt J.M.D. and M.L.R. J.M.D. has lived with them since she was three days old. The Shirleys also have three older children and have made J.M.D. and M.L.R. a part of their family. The Shirleys have extended family in their hometown, and the girls are part of their family. Both Petrov and the guardian ad litem, Barbara Whittaker, testified that it would be in the children's best interest for the parents' rights to be terminated and adopted by the Shirleys.

### D. Programs Available to Assist Individuals to Promote the Best Interest of the Child.

Appellant has not taken part in any of the services provided by the Department and, in fact, saw the services as unnecessary. Appellant testified that he did not need to take a parenting class and he did not need to attend counseling. The Shirleys have availed themselves of the Department's services. They have encouraged M.L.R. to attend counseling, which has helped her develop a relationship with J.M.D. Laronda testified that, in the beginning, she was dissatisfied with the level of care and supervision that the Department provided. However, now she feels like the Department is doing everything that they are supposed to be doing. She also testified that both J.M.D. and M.L.R. are receiving all the services that they need.

### E. The Plans for the Child by the Individuals Seeking Custody.

Appellant testified that he was not able to provide a home for J.M.D. at the time of trial because he was incarcerated. Appellant asked the court to place J.M.D. with his brother and sister-in-law, Tom and Connie Davis. The Davises initially only made plans to have J.M.D. in their home. They completed a home study and added an extra room to their home for J.M.D. However, the Department did not recommend placement with the Davises. The Davises had no relationship with J.M.D., and the Department was unable to confirm that a bedroom had been added to their house for J.M.D. The Davises were willing to have M.L.R. live with them but expressed concerns because of the accusations M.L.R. made of sexual abuse. They also did not have a home study completed in regard to M.L.R. or a room prepared for her. Petrov testified that the Department believed that it would be in J.M.D.'s and M.L.R's best interest to place them together. Appellant testified that he did not believe that the children needed to stay together and did not feel that the sibling bond was important at all.

8

*F.  The Stability of the Home or Proposed Placement.*

The Shirleys are seeking to adopt both J.M.D. and M.L.R.  J.M.D. and M.L.R. are considered part of the Shirleys' family.  Whittaker testified that J.M.D. is thriving in her environment.  She further testified that J.M.D. and M.L.R. are bonded as sisters and that M.L.R. has made great improvements since being in the Shirleys' care.  Petrov testified that the bond that a child forms with her primary caregiver in the first year of life is very important.  She further testified that, when you remove a child from the person they have bonded with, many children will develop an attachment disorder.  Petrov testified that, when children remain with the foster parents from birth and are adopted, an attachment disorder typically does not become an issue.

*G.  The Acts or Omissions of the Parent and any Excuses for the Acts or Omissions.*

Appellant has been in jail over half his adult life.  He has been in jail most of J.M.D.'s life.  He has not developed a bond with J.M.D. and has not even met her.  Appellant testified that the Department told him that he could not have any contact with J.M.D.  He testified that he was unable to see J.M.D.'s mother and J.M.D. at the hospital when she was born.  The parties stipulated that C.R.'s name was not on her hospital door when she delivered J.M.D.  Appellant further testified that the Department did not offer him services until after he had taken a paternity test even though he acknowledged that he was J.M.D.'s father from the beginning.  While these excuses may explain why appellant was unable to develop a relationship with J.M.D., they did not account for his course of conduct that has made him make poor decisions in his life and spend a great portion of it in jail.

Looking at all the evidence and analyzing the above listed factors, we find that the trial court's finding that termination was in J.M.D.'s best interest was supported by clear and convincing evidence.  We overrule appellant's second issue on appeal.

## VI.  *Conclusion*

We affirm the judgment of the trial court.


RICK STRANGE

JUSTICE

September 2, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

9