NO. 07-01-0222-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 19, 2001

_____

IN THE INTEREST OF K.B. AND J.B., MINOR CHILDREN
_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO.59,921-D; HONORABLE DON EMERSON, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Appellant Margaret Baca[1] appeals a bench trial judgment involuntarily terminating her parental rights to her two minor children, K.B. and J.B. By four points of error, she contends the trial court erred in finding by clear and convincing evidence that (1) she engaged in conduct or knowingly placed the children with persons who engage in conduct which endangers the physical and emotional well-being of the children because the evidence was legally or factually insufficient, (2) the termination of the parent-child relationship was not in the best interest of the children because the evidence was legally

_____

[1]Although the order also terminated the parental rights of the father, he did not appeal.

or factually insufficient, (3) she knowingly placed or allowed the children to remain in conditions or surroundings which endanger their physical or emotional well-being because the evidence was legally or factually insufficient, and (4) she constructively abandoned the children because the evidence was legally or factually insufficient. Based on the rationale expressed herein, we affirm.

Although Margaret's brief does not include a fact statement supported by record references as required by Rule 38.1(f) of the Texas Rules of Appellate Procedure, in the interest of justice, we have reviewed the entire record for disposition of this appeal. After receiving a report of abuse and neglect, the Texas Department of Protective and Regulatory Services (TDPRS) removed eight-year-old K.B. and two-year-old J.B. from Benny and Margaret Baca's custody and was appointed temporary managing conservator on February 25, 1999. Shortly thereafter, on March 10, 1999, TDPRS was appointed managing conservator and Margaret Baca was given the rights of possessory conservator, which entitled her to scheduled visitations.

Prior to being in custody of TDPRS, the children and Margaret Baca had been living in a one-bedroom hotel room with Margaret's fiancé.[2] During this time, although Margaret was on probation and had failed two urinalyses tests, she used other rooms at the hotel to use and deliver drugs. Shortly after TDPRS was appointed managing conservator of

_____

[2]Not the natural father.

2

the children, Margaret was offered the opportunity to participate in a Substance Abuse Felony Treatment Program, but refused. TDPRS then developed a service plan in an attempt to reunite the children with Margaret, whereby she would find employment, maintain proper housing for the children, and attend a parenting class. On seven of Margaret's visits with the children, she was provided with a written copy of the plan and oral explanations. However, even though she was informed that the services were free, she made no effort to comply with the plan and failed to attend several scheduled appointments. Margaret's visits with her children became sporadic. She consistently arrived late or did not attend at all. In response, TDPRS changed the visitation schedule from one time per week to every other week. After December 1999, Margaret no longer attended any scheduled visits with her children. Due to this lack of visitation and other observations, TDPRS caseworkers testified, without objection, that it would be in the best interest of the children to terminate the parent-child relationship as to both parents.

In its judgment, the trial court made the following three findings as grounds for its conclusion that termination of the parent-child relationship was justified:

1. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;

2. engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and

3

3. constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to the parent; (2) the parent has not regularly visited or maintained significant contact with the children; and (3) the parent has demonstrated an inability to provide the child with a safe environment.

The natural right existing between parents and their children is one of constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings must be strictly scrutinized. In Interest of G.M., 596 S.W.2d 846, 846 (Tex. 1980). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. In proceedings to terminate the parent-child relationship brought under section 161.001 of the Family Code, the petitioner must establish one or more acts or omissions enumerated under subsection (1) of the statute, and must additionally prove that termination of the parent-child relationship is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2001). Both elements must be established, and proof of one element does not relieve the petitioner of the burden of proving the other. *See* Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976).

Because termination of parental rights is of such weight and gravity, due process requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2001); *In Interest of G.M.*, 596 S.W.2d at 847. This

4

standard is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth or the allegations sought to be established. *Id.* Although the clear and convincing burden of proof required at the trial level is well settled, appellate courts have struggled to reconcile this burden of proof with the standard for appellate review of the sufficiency of evidence. As this Court has previously noted, the clear and convincing standard does not alter the rules generally applicable when appellate courts review factual findings. In Interest of M.D.S., 1 S.W.3d 190, 197 (Tex.App.–Amarillo 1999, no pet.).

**Standards of Review--Legal and Factual Sufficiency of the Evidence**

When presented with a challenge to the legal sufficiency of the evidence, the reviewing court must consider all of the evidence in a light most favorable to the party in whose favor the finding was rendered indulging every reasonable inference in that party's favor. Associated Indem. Corp. v. Cat Contracting, 964 S.W.2d 276, 285-86 (Tex. 1998). If there is any evidence of probative force to support the finding, the finding must be upheld. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). In reviewing a challenge to the factual sufficiency of the evidence the court must consider, weigh, and examine all of the evidence of record. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). The court should only set aside a finding if the evidence which supports the finding is so weak as to be clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

In the present case, the trial court ordered termination under sections 161.001(1)(D), (E), and (N) of the Family Code. These subsections provide for termination if the court finds by clear and convincing evidence that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months, and:
>
> > (i) the department or authorized agency has made reasonable efforts to return the child to the parent.
> >
> > (ii) the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii) the parent has demonstrated an inability to provide the child with a safe environment.

Tex. Fam. Code Ann. § 161.001(1)(D), (E) & (N) (Vernon Supp. 2001). The Code also requires that termination be in the best interest of the child. § 161.001(2) (Vernon Supp. 2001). In sum, a finding of a violation of either sections (D), (E), or (N), and a finding that termination is in the best interest of the child will support a judgment terminating the parent-child relationship.

We will first consider Margaret's fourth point, which challenges the legal and factual sufficiency of the evidence that she constructively abandoned her children in temporary or permanent managing conservatorship of the TDPRS. In order to involuntarily terminate parental rights under section 161.001(N), the evidence must show : (1) the child has been in the permanent or temporary managing conservatorship of TDPRS for not less than six months; (2) the department has made reasonable efforts to return the child to the parent; (3) the parent has not regularly visited or maintained significant contact with the child; and (4) the parent has demonstrated an inability to provide the child with a safe environment. In re D.T., 34 S.W.3d 625, 633 (Tex.App.–Fort Worth 2000, pet. denied).

On March 10, 1999, after a brief period as temporary managing conservator, TDPRS was named permanent managing conservator. At the time of the hearing in January of 2001, TDPRS had been the temporary or permanent managing conservator for at least six months, meeting the requirements of the first element. Element two requires that the department make reasonable efforts to return the children. From February 17, 1999 until October 22,1999, the first case worker for TDPRS attempted to return the children by creating a service plan which detailed the requirements that Margaret should complete in order to have her children returned. Margaret was given seven copies of the plan, each with an oral explanation. The case workers testified that TDPRS had made more than sufficient efforts to return the children and that Margaret made no effort to have the children returned. Margaret never completed the service plan even after she was

informed that the services were scheduled and paid for and all she had to do was keep the appointments. Included in the service plan was an assessment to be completed by Leta Acker. Acker contacted the case worker for TDPRS and stated she would no longer work with Margaret because she had missed two four-hour scheduled assessments. From this evidence, the trial judge could have concluded that the department made reasonable attempts to return the children as required by the second element.

The next element of constructive abandonment is that the parent has failed to visit or maintain regular contact with the child. Margaret was incarcerated in April 2000 and remained in jail at the time of the hearing. We recognize this period alone is not sufficient to establish constructive abandonment, *id.* at 634; however, before she was incarcerated Margaret did not regularly visit the children. When the children were taken into custody, Margaret was allowed weekly visits. She began to miss visits and arrive thirty to forty-five minutes late when she did attend. TDPRS then changed the visitation schedule to every other week. Margaret's visitation was sporadic and in December 1999, she admittedly made her last visit four months prior to her incarceration. The only contact Margaret claims occurred after this date is through her sister. The trial judge could have found that Margaret did not regularly visit her children.

The final element necessary in finding constructive abandonment is failure to provide the child with a safe environment. In her brief, Margaret admits that she "made error in judgment and has on isolated occasion engaged in conduct that she regrets."

8

Further, soon after Margaret's children were placed with TDPRS, she was asked to complete a Substance Abuse Felony Treatment Program as an alternative to incarceration for probation violation, but she refused and was incarcerated. As a result of her failure to utilize treatment, the children remained in the custody of the TDPRS while she was incarcerated. Margaret also failed two urinalyses while she was on probation. Accordingly, her violation of the terms of her probation created an unsafe environment for her children and we conclude that evidence is legally and factually sufficient to establish that Margaret constructively abandoned her children. Margaret's fourth point of error is overruled.

By her second point of error, Margaret contends the evidence was legally and factually insufficient to support a finding that termination was in the best interest of her children.[3] Factors to be considered when making the determination as to whether termination is in the child's best interest include: the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, parenting abilities, acts or omissions indicating the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions.

---

[3]TDPRS contends that Margaret waived this point by failing to cite to authorities to support her proposition. However, the Supreme Court's policy is to construe the Texas Rules of Appellate Procedure liberally so that decisions turn on substance rather than procedural technicality. Motor Vehicle Bd. of Tex. v. EPIADA, 1 S.W.3d 108, 111 (Tex. 1999). Thus, because termination of parental rights is a right of constitutional dimension, we will consider Margaret's contention. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).

9

In Interest of B.S.T., 977 S.W.2d 481, 485 (Tex.App.--Houston [14th Dist.] 1998, no pet.). Without any objection, the two case workers for TDPRS testified that in their opinion, termination of parental rights was in the best interest of the children and that the children expressed desires to be adopted and live in new homes. Because evidence of a parent's history, admissions, and conduct relating to drug abuse, and her inability to maintain a lifestyle free from arrests and incarcerations is also relevant to a best interest determination, *see Holley,* 544 S.W.2d at 370, the evidence establishing that Margaret violated probation, refused drug treatment, and used and delivered drugs can also be used to support the court's finding. We therefore conclude that the evidence was legally and factually sufficient to support a finding that termination was in the best interest of the children. Margaret's second point of error is overruled. Our disposition of points of error two and four pretermits consideration of points one and three. Tex. R. App. P. 47.1.

Accordingly, the judgment of the trial court is affirmed.


Don H. Reavis
Justice


Do not publish.