IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-11-00124-CV

 

Michael V. Pishko,

                                                                                    Appellant

 v.

 

Dr. Lale Yurttas,

                                                                                    Appellee

 

 



From the 361st District
Court

Brazos County, Texas

Trial Court No. 10-003350-CV-361

 

 



No. 10-11-00125-CV

 

N.K. ANAND,

                                                                                    Appellant

 v.

 

Dr. Lale Yurttas,

                                                                                    Appellee

 

 



From the 272nd District
Court

Brazos County, Texas

Trial Court No. 10-003351-CV-272

 

 



MEMORANDUM  Opinion



 

            The appellant in each of
these two cases has appealed the respective trial court’s order allowing
Appellee to take their presuit depositions pursuant to Rule of Civil Procedure
202.  Appellants also sought mandamus relief from the trial court orders in
separate but practically identical original proceedings, and today we have
denied mandamus relief in the original proceedings.

            “Presuit deposition orders
are appealable only if sought from someone against whom suit is not
anticipated.”  In re Jorden, 249 S.W.3d 416, 419 (Tex. 2008).  That is,
if the order allows the presuit deposition of a person against whom suit is contemplated,
the order is interlocutory and there is no appellate jurisdiction.  Thomas
v. Fitzgerald, 166 S.W.3d 746, 747-48 (Tex. App.—Waco 2005, no pet.).  

            In the trial courts and in
the original proceedings, Appellee has taken the position that she is investigating
potential claims against not only her employer, but also against the
Appellants.  Because Appellee contemplates or anticipates a possible suit
against Appellants, the trial courts’ orders are interlocutory, and these
appeals are dismissed for lack of jurisdiction.

 

REX
D. DAVIS

Justice

 

Before Chief
Justice Gray,

            Justice
Davis, and 

Justice
Scoggins

Appeals
dismissed

Opinion
delivered and filed July 20, 2011

[CV06]






is
legally insufficient.

 

J.F.C., 96 S.W.3d at 266.

            In a factual sufficiency
review, a court of appeals must give due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing.  Id.

[T]he inquiry must be “whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the State’s allegations.”  A court of appeals
should consider whether disputed evidence is such that a reasonable factfinder
could not have resolved that disputed evidence in favor of its finding.  If, in
light of the entire record, the disputed evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a
factfinder could not reasonably have formed a firm belief or conviction, then
the evidence is factually insufficient.  A court of appeals should detail in
its opinion why it has concluded that a reasonable factfinder could not have
credited disputed evidence in favor of the finding.

 

Id. at
266-67 (footnotes and citations omitted).  We view the evidence in a neutral
light when reviewing for factual sufficiency.

Best Interest of the Child

            In
determining the best interest of a child, a number of factors have been
considered, including (1) the desires of the child; (2) the emotional and
physical needs of the child now and in the future; (3) the emotional and
physical danger to the child now and in the future; (4) the parental abilities
of the individuals seeking custody; (5) the programs available to assist these
individuals; (6) the plans for the child by these individuals; (7) the
stability of the home; (8) the acts or omissions of the parent that may
indicate the existing parent-child relationship is not a proper one; and (9)
any excuse for the acts or omissions of the parent.  Holley, 544 S.W.2d at
371-72.  This list is not exhaustive, but simply indicates factors that have
been or could be pertinent.  Id.

            For
cases in which the department or another government agency is the petitioner,
subsection 263.307(a) of the Family Code provides that “the prompt and
permanent placement of the child in a safe environment is presumed to be in the
child’s best interest.”  Tex. Fam. Code
Ann. § 263.307(a) (Vernon 2009).  Subsection (b) then lists thirteen
factors the court, the department, or other authorized agencies should consider
in determining whether a parent is “willing and able to provide the child with
a safe environment.”  Id. § 263.307(b).  In our review of the
trial court’s termination order, we will likewise give consideration to these
factors to the extent applicable.  See In re R.R., 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); In re S.N., 272 S.W.3d 45, 50-51 (Tex. App.—Waco 2008, no
pet.); In re T.N.F., 205 S.W.3d 625, 632-33 & n.3 (Tex. App.—Waco
2006, pet. denied).  We will address the best-interest finding separately for
each parent.

Charlene

Desires
of the Child: 
S.K.A.’s desires are unknown because she was less than one year old at the
time of trial.

The
Child’s Emotional and Physical Needs and the Emotional and Physical Danger to
the Child:
 Charlene points out in her brief that there is no evidence that S.K.A.
will have any special physical or emotional needs beyond that of a normal child. 
Charlene’s mother also testified that Charlene has bonded with S.K.A., such
that S.K.A. misses her when she is not there.  But other evidence on these two factors
weighs heavily in favor of the finding that termination of Charlene’s parental
rights was in S.K.A.’s best interest.  

At
the time of trial, Charlene was facing incarceration for violating her
probation.  See In re M.D.S., 1 S.W.3d 190, 200 (Tex. App.—Amarillo
1999, no pet.) (noting that need for permanence is paramount consideration for
child’s present and future physical and emotional needs and that incarceration
makes a parent’s future uncertain).  She was on probation after being convicted
of one felony (evading arrest in a motor vehicle) and three misdemeanors
(criminal mischief, possession of marijuana, and resisting arrest).  The felony
conviction came after she allegedly tried to run over her then one-year-old
son’s father with her car while the baby was in the car with her.

Although
she testified at trial that she is now “clean,” Charlene also admitted to a
past history of drug use.  See May v. May, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied) (stating that evidence of past misconduct may
not itself be sufficient to show present unfitness but adult’s future conduct
may well be measured by recent deliberate past conduct as it may be related to
same or similar situation).  Dawn Jock, the CPS employee who conducted the
initial investigation in this case, testified that she went to the hospital
just after S.K.A. was born because there had been an allegation of physical
abuse:  Charlene had tested positive for cocaine at the time of S.K.A.’s
birth.  Jock further testified that when S.K.A. was removed four days after she
was born, Charlene took a hair follicle test and tested positive for a
relatively high level of cocaine.  Fortunately, there was no positive drug test
on S.K.A.  Charlene denied using cocaine but admitted “occasionally” using
marijuana during her pregnancy with S.K.A.  Dr. Douglas Cheatam, the clinical
psychologist who performed Charlene’s psychological evaluation, testified that
Charlene not only acknowledged using marijuana during her pregnancy but also told
him she knew that using marijuana during her pregnancy could have an effect on
her baby.

Richard
Boyer, Charlene’s counselor, testified at trial that he had diagnosed Charlene
with polysubstance abuse and personality disorder not otherwise specified.  He
testified that Charlene is still in a state of denial about some of her
problems, such as whether she has an anger control problem, whether she is
taking control of her finances, whether she is able to recall and apply what
she has learned in parenting classes, and whether overall she has any problems
with her children.  Boyer further stated that Charlene has not made enough
significant progress to warrant return of S.K.A. to her care.  The evidence on
these factors thus weighs in favor of the finding that termination of
Charlene’s parental rights was in the child’s best interest.

Parental
Abilities and Available Programs:  The record contains conflicting evidence regarding these two
factors.  Charlene testified at trial that she had been attending NA, parenting
classes, anger management classes, and counseling sessions.  CPS had determined
that Charlene’s eleven-year-old daughter and twelve-year-old son should remain
in her home.  The children were doing very well in school and participated in
extra-curricular activities.  When the son had some behavioral problems, he saw
a counselor and then had no further problems.

On
the other hand, Charlene has had prior CPS cases beginning in 2002, with
additional cases in 2003, 2004, 2006, and 2007, and custody of her third-eldest
child has been given to his father.  Deborah January, the ongoing CPS
caseworker for S.K.A., testified that although Charlene took parenting classes,
there was a notation in one of the classes that she did not take the class
seriously.  January further testified that Charlene had not been able to
verbalize what she had learned in the parenting classes.  When January asked
Charlene to discuss what she had learned in the classes, January was met with
animosity or some comment about it not being necessary.  See Wilson v. State, 116 S.W.3d 923, 930 (Tex. App.—Dallas 2003, no pet.) (considering
lack of motivation in improving poor parenting skills in best-interest determination). 
Moreover, as stated above, Boyer, Charlene’s counselor, testified that she had
not made enough significant progress to warrant return of S.K.A. to her care.

Plans
for Child and Stability of Home:  Charlene testified that she and Donald have been in a
relationship for two years and are engaged to be married.  Charlene’s older
children consider Donald their father.  Donald works at Wal-Mart and takes home
about $1,500 per month, and Charlene had just started working at McDonald’s two
weeks before trial.  If S.K.A. is returned to her parents, she would live with
Donald, Charlene, and Charlene’s two oldest children in a two-bedroom mobile
home.  Donald testified that S.K.A. would either sleep in the bedroom where
Charlene and her daughter sleep or in the living room where he sleeps. 
Charlene and Donald have also been looking for a larger home.

Charlene
does admit in her brief that she “does face a short incarceration which will
cause some instability at least for that period of time.”  Furthermore, Donald is
not divorced from his current wife.  January also testified that Charlene and
Donald have not been compliant in the Service Plan’s requirement that they
maintain stability in their lives over time.  She testified that there is a lot
of financial instability, and since she has been involved in the case, she has
not seen any proof of Charlene working.  Donald and Charlene do not own a home,
and although they have been trying to buy a home throughout the duration of the
case, they have not secured anything.  As stated above, Charlene has a history
of prior CPS cases, and custody of her third-eldest child has been given to his
father.  Donald also has some history with CPS.  His other child lives with the
child’s maternal grandparents.  The evidence on these factors thus weighs in
favor of the finding that termination of Charlene’s parental rights was in the
child’s best interest.

Charlene’s
Acts or Omissions and Any Excuses for Those Acts or Omissions:  Charlene admits in her
brief that her acts or omissions weigh in favor of termination.  She has a
criminal history.  In addition, a total of four motions have been filed to
revoke her probation.  She has not made any child support payments for S.K.A.,
and January testified that she was not in compliance with the CPS Service
Plan.  Charlene admitted to a history of drug use and to using marijuana during
her pregnancy with S.K.A.  She testified that some doctors state that using
marijuana is not harmful to an unborn child and that she otherwise never used
drugs around her children.

Statutory
Factors: 
Of the thirteen factors, evidence on three factors weighs in favor of the
finding that termination was in the child’s best interest:  subsection (6)—the
results of Donald’s and Charlene’s psychological evaluations; subsection
(8)—the history of substance abuse by both Donald and Charlene; and subsection
(11)—the willingness and ability of Donald and Charlene to effect positive
environmental and personal changes within a reasonable period of time.  The
evidence on the remaining statutory factors is either neutral or inapplicable.

Summary:  Considering all the
evidence in relation to the best interest factors in the light most favorable
to the trial court’s finding, a reasonable trier of fact could have formed a
firm belief or conviction that termination of Charlene’s parental rights was in
the child’s best interest.  And viewing all the evidence in a neutral light, we
conclude that both the disputed and undisputed evidence favoring and
disfavoring the finding permits a reasonable factfinder to form a firm
conviction and belief that termination of Charlene’s parental rights was in
S.K.A.’s best interest.  The evidence on termination of Charlene’s parental
rights being in S.K.A.’s best interest is legally and factually sufficient.  We
overrule Issue A.1.




Donald

Desires
of the Child: 
S.K.A.’s desires are unknown because of her age.  

The
Child’s Emotional and Physical Needs and the Emotional and Physical Danger to the
Child:  As
did Charlene, Donald points out in his brief that there is no evidence that
S.K.A. will have any special physical or emotional needs beyond that of a
normal child.  Charlene’s mother also testified that Donald has bonded with
S.K.A., such that S.K.A. misses him when he is not there.  But again, other evidence
on these two factors weighs heavily in favor of the finding that termination of
Donald’s parental rights was in the child’s best interest.

Although
he claimed he had not used methamphetamine in over a year, Donald admitted to a
past history of methamphetamine use, which caused CPS to become involved with
his family.  See May, 829 S.W.2d at 377.  He reported to Dr. Cheatam, the
clinical psychologist who performed his psychological evaluation, that he
voluntarily signed over the custody rights to his then five-year-old son to the
maternal grandparents in order to facilitate an end to CPS involvement.  Donald
also acknowledged that he has a history of cocaine and marijuana use, including
as recently as a couple of months before Dr. Cheatam’s evaluation.  Jock
testified that on the day S.K.A. was removed, Donald took a hair follicle test
and tested positive for a relatively high level of cocaine.  Donald also
acknowledged that he was aware that Charlene used drugs during her pregnancy
with S.K.A.

Boyer,
Donald’s counselor, testified that he diagnosed Donald with polysubstance abuse
disorder.  When Boyer was asked whether Donald would be a danger to S.K.A., he
replied that his immediate concern would be “lack of progress in the services
that he was Court ordered to participate in” and “lack of progress in
counseling.”  Boyer further explained, “It’s an indication of him not following
through with what he’s been asked to do to show that he is a responsible
parent.”  Boyer also expressed concern with Donald’s passivity.  Boyer
explained that Donald does not deny his problems, but instead, dismisses them. 
He does not admit to the things he needs to work on regarding this case.  The
evidence on these factors thus weighs in favor of the finding that termination of
Donald’s parental rights was in the child’s best interest.

Parental
Abilities and Available Programs:  The record contains conflicting evidence regarding these two
factors.  At the time of trial, Donald was attending NA, parenting classes,
anger-management classes, and counseling sessions.  CPS had determined that
Charlene’s eleven-year-old daughter and twelve-year-old son should remain in
the home that he shared with Charlene.  Charlene testified that the children
consider Donald their father.  The children were doing very well in school and
participated in extra-curricular activities.  When Charlene’s eldest son had
some behavioral problems, he saw a counselor and then had no further problems.

On
the other hand, January testified that when Charlene had previously been
incarcerated, Donald “had some issues with taking care of the children.”  She
stated that the grandmother actually did a lot of the caretaking.  January
further testified that Donald had not been able to verbalize what he had
learned in the parenting classes.  When January asked Donald to discuss what he
had learned in the classes, she was met with animosity or some comment about it
not being necessary.  See Wilson, 116 S.W.3d at 930.  Moreover, when Boyer
was asked whether he felt Donald and Charlene were prepared to have S.K.A. back
in their home and whether they would be able to parent her appropriately, he
replied that he had seen no “evidence of progress and them advancing from the
point where the child was removed.”

Plans
for Child and Stability of Home:  Because Donald and Charlene share a home and have both
expressed the same plans for S.K.A., we refer to our prior analysis for
Charlene as to these factors.  The evidence on these factors weighs in favor of
the finding that termination of Donald’s parental rights was in the child’s
best interest.

Donald’s
Acts or Omissions and Any Excuses for Those Acts or Omissions:  Donald states in his
brief that his acts or omissions are limited to his drug use and that this
factor does weigh in favor of termination.  Donald admitted to a history of
drug use from stress and bad choices.  Because of his methamphetamine use, CPS
became involved, and he voluntarily signed over the custody rights to his son
to the maternal grandparents.  January also testified that Donald was not in
compliance with the CPS Service Plan.

Statutory
Factors:  Again,
because Donald and Charlene share a home, we refer to our prior analysis for
Charlene as to these factors.

Summary:  Considering all the
evidence in relation to the best interest factors in the light most favorable
to the trial court’s finding, a reasonable trier of fact could have formed a
firm belief or conviction that termination of Donald’s parental rights was in
the child’s best interest.  And viewing all the evidence in a neutral light, we
conclude that both the disputed and undisputed evidence favoring and
disfavoring the finding permits a reasonable factfinder to form a firm
conviction and belief that termination of Donald’s parental rights was in
S.K.A.’s best interest.  The evidence on termination of Donald’s parental
rights being in S.K.A.’s best interest is legally and factually sufficient.  We
overrule Issue B.1.

Predicate Grounds for Termination

 

The trial court made affirmative
findings on the following predicate grounds for termination for both Donald and
Charlene:  


 knowingly
 placed or knowingly allowed the child to remain in conditions or
 surroundings which endanger the physical or emotional well-being of the
 child; 


 


 engaged
 in conduct or knowingly placed the child with persons who engaged in
 conduct which endangers the physical or emotional well-being of the child;
 


 


 failed
 to support the child in accordance with the mother’s ability during a
 period of one year ending within six months of the date of the filing of
 the petition; and 


 


 failed
 to comply with the provisions of a court order that specifically
 established the actions necessary for the parents to obtain the return of
 the child who has been in the permanent or temporary managing conservatorship
 of the Department of Family and Protective Services (TDFPS) for not less
 than nine months as a result of the child’s removal from the parent under
 Chapter 262 for the abuse or neglect of the child. 


 

See Tex. Fam. Code Ann. § 161.001(1)(D)-(F), (O).  The court also made an
affirmative finding on the following additional predicate ground for
termination for Charlene: used a controlled substance, as defined by Chapter
481, Health and Safety Code, in a manner that endangered the health or safety
of the child, and (1) failed to complete a court-ordered substance abuse
treatment program; or (2) after completion of a court-ordered substance abuse
treatment program, continued to abuse a controlled substance.  See id. §
161.001(1)(P).  Donald and Charlene challenge the legal and factual sufficiency
of all of these findings, but proof of only one predicate act under section
161.001(1) is necessary to support a judgment of termination when there is also
a finding that termination is in the child’s best interest.  In re A.V.,
113 S.W.3d 355, 362 (Tex. 2003).

Charlene

            Section 161.001(1)(E) of the
Family Code states that the court may order termination of the parent-child
relationship if the court finds by clear and convincing evidence that the
parent has engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being of the
child.  Tex. Fam. Code Ann. §
161.001(1)(E).  “Endanger” means to expose to loss or injury or to jeopardize. 
 Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  However, it is not necessary that the child actually suffer injury.  Id.

            Termination under subsection
E must be based on more than a single act or omission; a voluntary, deliberate,
and conscious “course of conduct” by the parent is required.  In re D.M.,
58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).  It is inconsequential
that the parental conduct considered in a termination proceeding occurred
before the child’s birth.  Rather, courts look to what the parent did both
before and after the child’s birth to determine whether termination is
necessary.  Id.; Avery v. State, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ).

A mother’s use of drugs during her
pregnancy is conduct that endangers the physical and emotional well-being of
the child.  In re W.A.B., 979 S.W.2d 804, 806 (Tex. App.—Houston [14th Dist.] 1998, pet. denied), disapproved of on other grounds by J.F.C.,
96 S.W.3d at 267 n.39; see Dupree v. Tex. Dep’t of Prot. & Reg. Servs.,
907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ).  Jock testified that she
went to the hospital just after S.K.A. was born because Charlene had tested
positive for cocaine at the time of S.K.A.’s birth.  She further testified that
when S.K.A. was removed four days later, Charlene and Donald took a hair
follicle test and both tested positive for a relatively high level of cocaine.

Charlene argues that she denied using
cocaine while pregnant and that the test was not entered into evidence and has
not been proven by scientific testimony.  But even if we disregard the
testimony about her testing positive for cocaine, Charlene admitted that she
has a history of illegal drug use and that she “occasionally” used marijuana
during her pregnancy with S.K.A.  Although she tried to explain this drug use
at trial by testifying that some doctors state that using marijuana is not
harmful to an unborn child, she admitted to her counselor that she knew using
marijuana during her pregnancy would have an effect on her baby but that she
felt the use was infrequent enough that it would not permanently hurt the
child.  Furthermore, as part of the Service Plan provided to her by CPS,
Charlene was required to participate in NA or AA, but at the time of trial, she
testified that she had only begun participating in NA during the prior two
weeks.

Using the appropriate standards of
review for legal and factual sufficiency, we conclude that the evidence is such
that a factfinder could reasonably form a firm belief or conviction that
Charlene engaged in conduct or knowingly placed S.K.A. with persons who engaged
in conduct that endangered her physical and emotional well-being.  The evidence
is thus legally and factually sufficient to support the trial court’s finding
on that predicate ground for termination as to Charlene.  We overrule Issue A.3. 
Moreover, because we have found the evidence legally and factually sufficient
to support the finding that Charlene engaged in conduct or knowingly placed
S.K.A. with persons who engaged in conduct that endangered her physical and
emotional well-being, we need not address the sufficiency of the evidence to
support the other predicate grounds as to Charlene (Issues A.2, A.4, A.5 and
A.6).  See A.V., 113 S.W.3d at 362.

Donald

            Section 161.001(1)(D) of the
Family Code states that the court may order termination of the parent-child
relationship if the court finds by clear and convincing evidence that the
parent has knowingly placed or knowingly allowed the child to remain in conditions
or surroundings which endanger the physical or emotional well-being of the
child.  Tex. Fam. Code Ann. §
161.001(1)(D).  Once again, “endanger” means to expose to loss or injury or to
jeopardize, but it is not necessary that the child actually suffer injury.  Boyd,
727 S.W.2d at 533.

            Donald admitted to Dr.
Cheatam that he knew Charlene was using drugs while she was pregnant with
S.K.A.  Although he told Dr. Cheatam he thought her drug use during the pregnancy
was “stupid,” there is no evidence that he did anything to stop it.  Rather, he
admitted that he was also using marijuana and cocaine during that time frame.  Jock testified that on the
day S.K.A. was removed, Donald took a hair follicle test and tested positive
for a relatively high level of cocaine.

            The relevant
conduct includes not only the parents’ conduct as evidenced by the parents’
acts, but also the parents’ omissions or failures to act.  In re M.J.M.L.,
31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied); Edwards v. Tex. Dep’t of Prot. & Reg. Servs., 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no
writ), disapproved of on other grounds by J.F.C., 96 S.W.3d at 267 n.39.
 Furthermore, as stated above, courts
look to what the parent did both before and after the child’s birth to
determine whether termination is necessary.  In re D.M., 58 S.W.3d at
812; Avery, 963 S.W.2d at 553.

Donald’s failure to take any action to
protect S.K.A. from Charlene’s drug abuse is sufficient to establish that he
knowingly allowed the child to remain in conditions or surroundings that
endangered her physical well-being.  See Edwards, 946 S.W.2d at 138. 
The evidence is thus legally and factually sufficient to support the trial
court’s finding on that predicate ground for termination as to Donald.  We
overrule Issue B.2.  Moreover, because we have found the evidence legally and
factually sufficient to support the finding that Donald knowingly placed or
knowingly allowed the child to remain in conditions or surroundings which
endanger the physical or emotional well-being of the child, we need not address
the sufficiency of the evidence to support the other predicate grounds as to
Donald (Issues B.3, B.4, and B.5).  See A.V., 113 S.W.3d at 362.

TDFPS as Permanent Managing Conservator

 

            Donald and Charlene argue
that the trial court erred in appointing TDFPS as S.K.A.’s permanent managing
conservator because the appointment of a parent would not significantly impair
S.K.A.’s physical or emotional health.  However, we concluded above that the
evidence is legally and factually sufficient to support the trial court’s
findings as to at least one predicate violation for each parent and that
termination was in the best interest of the child.  Thus, the trial court
properly terminated Donald and Charlene’s parental rights to S.K.A.  See Tex. Fam. Code Ann. § 161.001; Swate,
72 S.W.3d at 766.  Section 161.207 of the Family Code states, “If the court
terminates the parent-child relationship with respect to both parents . . . ,
the court shall appoint a suitable, competent adult, the Department of
Protective and Regulatory Services, a licensed child-placing agency, or an
authorized agency as managing conservator of the child.”  Tex. Fam. Code Ann. § 161.207 (Vernon
2009).  Thus, the trial court did not err in appointing TDFPS as permanent
managing conservator of the child.  We overrule Issue D.1.

Ineffective Assistance of Counsel

In Issue C.1, Donald and Charlene contend
that they received ineffective assistance of counsel.  In analyzing the
effectiveness of counsel in a parental-rights termination case, we follow a
two-pronged standard set forth by the United States Supreme Court in Strickland
v. Washington to determine whether an attorney’s representation was so
inadequate to violate the right to effective assistance of counsel.  In re
M.S., 115 S.W.3d 534, 545 (Tex. 2003) (citing Strickland v. Washington,
466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).  To show ineffective assistance
of counsel in a termination case, the appellant must show (1) that counsel’s
assistance fell below an objective standard of reasonableness and (2) that
counsel’s deficient assistance, if any, prejudiced the parent.  Id. (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064).

            Strickland’s
“record” requirement also applies to ineffective-assistance claims in
termination cases:  “An allegation of ineffective
assistance must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.”  In re S.R.C., No.
2-02-426-CV, 2003 WL 22966325 at *2 (Tex. App.—Fort Worth Dec. 18, 2003, no
pet.) (mem. op.) (citing Thompson v. State, 9 S.W.3d 808, 814 (Tex.
Crim. App. 1999)).  In a parental-rights termination case where
the parent asserts on appeal the ineffective assistance of trial counsel, but
nothing in the record indicates trial counsel’s reasons or strategies for the
complained-of conduct, the lack of a record is practically always fatal to the
parent’s appellate issue under current Texas law.  Because this inequity
existed in this appeal, and because Donald and Charlene have no other recourse
to address this issue, we abated and remanded the cause to the trial court for
a hearing at which Donald and Charlene could develop an evidentiary record in
connection with their ineffective assistance of counsel claim.  See In re
T.N.F., 191 S.W.3d 329, 332 (Tex. App.—Waco 2006, order) (per curiam); In
re K.K., 180 S.W.3d 681, 687-88 (Tex. App.—Waco 2005, order) (per curiam).  We
also provided them time to file a supplemental brief addressing their
ineffective assistance of counsel claim in light of the evidentiary hearing.  We
received a supplemental reporter’s record but have not received supplemental
briefs.  Thus, we will address the merits of Donald and Charlene’s
ineffective-assistance claims as presented in their original briefing.

Donald and Charlene both assert that
their trial counsel was ineffective because he:  (1) failed to file a motion
for continuance; (2) failed to investigate the case; (3) failed to call
witnesses to rebut petitioner’s claims; and (4) failed to undertake discovery. 
But Donald and Charlene have not demonstrated that counsel’s alleged errors had
an effect on the outcome of the proceeding such that its result would have been
different.

The second prong of Strickland
requires a showing that counsel’s errors were so serious that they deprived the
defendant of a fair trial, i.e., a trial with a reliable result.  Strickland,
466 U.S. at 687, 104 S.Ct. at 2064.  In other words, appellant must show there
is a reasonable probability that, but for counsel’s unprofessional errors, the
result of the proceeding would have been different.  Id. at 694,
104 S.Ct. at 2068.  A reasonable probability is a probability sufficient to
undermine confidence in the outcome.  Id.  The ultimate focus of our
inquiry must be on the fundamental fairness of the proceeding in which the
result is being challenged.  Id. at 697, 104 S.Ct. at 2070.

Donald and Charlene only address the
second prong of Strickland in relation to their argument that trial
counsel failed to request a continuance.  They argue that if the trial date had
been continued, they would have had additional time to complete the Service
Plan, and, considering the progress that they had already made, the fact that
they were not given additional time clearly prejudiced their case.  But Boyer
testified that he had not seen any evidence of progress by either parent from
the time when S.K.A. was removed.  He testified that Charlene was still in a state of denial about
many of her problems and that she had not made enough significant progress to
warrant return of S.K.A. to her care.  Likewise, when Boyer was asked whether
Donald would be a danger to S.K.A., he replied that his immediate concern would
be “lack of progress in the services that he was Court ordered to participate
in” and “lack of progress in counseling.”  Boyer also expressed concern with
Donald’s passivity, meaning he dismisses his problems and will not admit to the
things he needs to work on regarding this case.

For these reasons, we
conclude that Donald and Charlene failed to demonstrate prejudice and cannot
establish ineffective assistance of counsel.  We overrule Issue C.1.

Conclusion

            We affirm the trial
court’s termination order. 

  

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray concurs in the
judgment of the Court only and only to the extent that it affirms the trial
court’s order terminating the parental rights of Donald and Charlene as to
S.K.A.)

Affirmed

Opinion
delivered and filed August 19, 2009

[CV06]