# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00427-CV

E. B., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
NO. C2017-1044D, HONORABLE KARIN E. BONICORO, JUDGE PRESIDING

## MEMORANDUM OPINION

After a bench trial, the trial court signed a decree terminating the parental rights of appellant E.B. ("Eddie")[1] to his children, "Sam" and "Amy," who were almost two and one, respectively, at the time of trial. On appeal, Eddie contends that the evidence is insufficient to support the trial court's finding that termination was in his children's best interest. We affirm the trial court's decree.[2]

---

[1] We will refer to the children and their family members by aliases. *See* Tex. R. App. P. 9.8 (related to protection of minor's identity in cases involving termination of parental rights).

[2] The decree also terminated the parental rights of the children's mother "Sarah" to Sam and Amy as well as to Sarah's three older children by two other fathers, whose rights to their respective children were also terminated. Eddie is the only parent who appeals.

**DISCUSSION**

A trial court may terminate a parent's parental rights if clear and convincing evidence shows that the parent committed conduct that amounts to a statutory ground for termination and that termination of parental rights would be in the child's best interest. *See* Tex. Fam. Code § 161.001(b); *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014). Eddie concedes that there is legally and factually sufficient evidence to support the trial court's finding that he committed a statutory ground for termination[3] but challenges the evidentiary sufficiency to support the trial court's best-interest finding.

In reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *Id.*; *see In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014).

In evaluating factual sufficiency, we view the entire record and uphold the finding unless the disputed evidence that could not reasonably have been credited in favor of a finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction that the Department's allegations were true. *In re A.B.*, 437 S.W.3d 498, 502–03 (Tex. 2014) (citing *J.F.C.*,

---

[3] The trial court found that Eddie had committed several of the statutorily enumerated grounds for termination. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (O), (P).

2

96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002)). We defer to the factfinder's reasonable determination on issues of credibility that involve an evaluation of appearance or demeanor, *J.P.B.*, 180 S.W.3d at 573, and we resolve disputed evidence in favor of the finding if a reasonable person could have found it clear and convincing, *J.F.C.*, 96 S.W.3d at 266.

A factfinder's best-interest finding is reviewed in light of several factors set out in *Holley*: (1) the child's wishes, if the child is of an appropriate age to express such wishes; (2) the child's present and future emotional and physical needs; (3) present and future emotional and physical danger to the child; (4) the parenting abilities of the individuals seeking custody; (5) programs available to assist those people seeking custody in promoting the child's best interest; (6) plans for the child by the people or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate that the parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department need not prove all of the *Holley* factors, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a child's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *See C.H.*, 89 S.W.3d at 27. Evidence presented to satisfy a predicate statutory-ground finding may also be probative of the child's best interest. *Id.* at 28.

### Summary of the evidence

There was evidence at trial related to several of the *Holley* factors, some of which we summarize here. Eddie testified at trial that he was currently in jail on "about fifteen charges,"

stemming from narcotics, domestic violence, and assaults. Evidence showed that Eddie had spent a large portion of Sam's and Amy's lives in jail and had previous convictions for injury to a child, burglary of a habitation, continuous family violence, criminal mischief, and possession of heroin. The children's mother, Sarah, testified that Eddie physically assaulted her while she was six months' pregnant with Sam and that she and Eddie have used methamphetamine together. Evidence showed that Eddie has been indicted for the assault against Sarah, which is a third-degree felony enhanced by the habitual-offender statute, with a possible prison sentence of twenty-five years to ninety-nine years or life.

Eddie testified that he had not attended couples or individual therapy, completed a psychological evaluation, or completed an inpatient drug-treatment program despite those services appearing in his service plan as requirements for having his children returned. He explained that he had not completed his services because he "was not fully" aware of his service plan and did not "really understand" what was required of him. He explained that he had not completed the drug-treatment program because he was "awaiting a bed." A department case worker testified that bed availability has never been an issue in any of his previous cases. Eddie tested positive for methamphetamine twice during the pendency of this case and missed several of his drug-test dates.

An investigator with the San Marcos police department testified that, after witnessing a suspected drug deal in which Eddie was involved—which occurred a couple months before Sam was born—Eddie invited the officer to his hotel room, in which Eddie admitted to the officer that he had methamphetamine in the room and ran a "narcotics distribution business" to "support his meth habit." The officer also testified that Eddie was a suspected member of a gang going by the

4

name of the "Mexican Mafia," based on information the officer had obtained from the FBI and on a particular tattoo on the side of Eddie's head. Evidence showed that Eddie has been indicted for the offense of possession of methamphetamine, less than one gram—a state-jail felony enhanced to a second-degree felony—stemming from this encounter.

On a later occasion—a few months after Amy was born—the same police officer obtained a search warrant for Eddie's hotel room after conducting surveillance on Eddie. Various illegal drugs of varying quantities were found in Eddie's hotel room, as well as "multiple firearms" and drug paraphernalia. Eddie was later indicted for illegal possession of firearms, possession of heroin, and possession of methamphetamine. The officer further testified that on a later date when he assisted CPS with a "home visit" at Sarah's home—after which the children were removed—the officer found large quantities of drugs and drug paraphernalia; Sarah told him at the time that she was selling drugs. The officer testified that he knew Eddie was in a relationship with Sarah throughout the pendency of this case. Eddie testified at trial that, although he was with Sarah "every day" before the Department removed the children, it would "surprise" him to learn that Sarah had admitted to selling drugs. Eddie was arrested in 2018 for more drug-related offenses as well as aggravated assault of a public servant, domestic violence, and evading arrest. He was indicted for evading arrest with a vehicle and unlawful possession of a firearm.

A CPS case worker testified that on a visitation with the infant Amy, Eddie was holding the infant in his arms and started to fall asleep twice, almost allowing the infant to fall out of his arms before he caught himself and recovered the child. The case worker testified that he asked for a random drug screen after that visit—which turned out to be positive—because of the case

worker's concern that Eddie's behaviors during the visitation were consistent with being under the influence of illegal drugs. The case worker recommended terminating Eddie's parental rights due to "his lack of participation, due to his continued criminal activity and his continued arrests for such activity, as well as his insistence in remaining in a relationship with [Sarah], though it was not in either of their best interests." Eddie had not seen the children since about seven or eight months before trial and could not state Amy's birth date with specificity. Eddie's plans for the children were for Sarah to raise them and, if that was not possible, he hoped that the children would be placed with family or friends. Eddie testified that he believed Sarah was an appropriate caregiver for the children.

The case worker further testified that the children were "bonded" to their respective placement families,[4] both of which families were willing to adopt. He testified that the Department had looked into placing the children with family members of Eddie and Sarah, but those potential placements were either not suitable or willing. He testified that the foster-to-adopt homes were able to meet the children's educational, physical, and emotional needs and that neither child had any special needs that had been identified. A factfinder may consider that a child has bonded with the child's current placement, is well cared for by them, and has spent minimal time with a parent. *See L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *10 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.).

---

[4] Sam had been placed in a foster home with his three older half-brothers, two of whom were the children of Sarah and the second father whose rights were terminated in this proceeding, and one of whom was the child of Sarah and the third father whose rights were terminated in this proceeding.

Another case worker testified that Eddie had "not alleviated the concerns that brought the children into the care of the Department." He testified that it would be in the children's best interests to remain in their respective foster homes and be adopted. He also testified that he did not know when Eddie would get out of jail or that Eddie would be able to complete his court-ordered services if and when he did get out of jail. He explained that the children have been able to continue having sibling visits while in their respective foster homes, which the foster homes have coordinated on their own and are cooperative about without "prompting" from the Department.

The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs. *Robert T. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00061-CV, 2013 WL 812116, at *12 (Tex. App.—Austin Mar. 1, 2013, no pet.) (mem. op.). A parent's current and future incarceration is relevant to his ability to meet the child's present and future physical and emotional needs, and the parent's incarceration at the time of trial "makes his future uncertain." *In re M.D.S.*, 1 S.W.3d 190, 200 (Tex. App.—Amarillo 1999, no pet.); *see In re M.A.N.Z.*, No. 04-17-00381-CV, 2017 WL 6032539, at *7 (Tex. App.—San Antonio Dec. 6, 2017, pet. denied) (mem. op.) (concluding that parent's plan for child to remain where he is "until his uncertain release [from prison] fails to comply with the ultimate goal of providing [the child] with a stable and permanent home"). Also, a factfinder may infer that past conduct endangering a child's well-being may recur in the future if the child is returned to the parent. *Robert T.*, 2013 WL 812116, at *12. A factfinder may also give "great weight" to the "significant factor" of drug-related conduct, *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ), and a parent's repeated incarcerations may reasonably suggest

7

that his "parenting skills are seriously suspect." *In re A.W.*, No. 06-07-00118-CV, 2008 WL 360825, at *3 (Tex. App.—Texarkana Feb. 1, 2008, no pet.) (mem. op.).

### *Evidentiary sufficiency*

After viewing the above-summarized and other evidence in the light most favorable to the trial court's finding, we conclude that the trial court could reasonably have come to a firm belief or conviction that termination of Eddie's parental rights was in the best interest of the children, especially considering the evidence supporting the statutory grounds for termination (i.e., endangerment, constructive abandonment, use of controlled substances, and failure to complete court-ordered services) and Eddie's long history of drug use and criminal conduct, including domestic violence against the children's mother, as well as incarceration. Accordingly, we conclude that the evidence is legally sufficient to support the district court's finding by clear and convincing evidence that termination is in the children's best interest.

We reach the same conclusion regarding the factual sufficiency of the evidence after giving due consideration to the disputed evidence in the case. Deferring to the district court's role to assess the credibility of the witnesses, especially as those credibility determinations relate to Eddie's excuses for not completing his court-ordered services, we conclude that the disputed evidence is not so significant that a reasonable factfinder could not form a firm belief or conviction that terminating Eddie's parental rights was in the best interest of the children. We conclude that the evidence is factually sufficient to support the district court's finding by clear and convincing evidence that termination is in the children's best interest.

8

## CONCLUSION

We affirm the trial court's decree terminating the parental rights of Eddie to his two children.

_____
David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed: November 20, 2018