COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | No. 08-19-00246-CV |
| | § | |
| IN THE INTEREST OF L.D.C., | § | Appeal from the |
| A Child. | § | 109th District Court |
| | § | of Andrews County, Texas |
| | § | (TC# 21,140-A) |
| | § | |

**O P I N I O N**

Appellant G.G.C. (Father) appeals a judgment terminating his parental rights to son L.D.C. We affirm the judgment of the trial court.

**BACKGROUND**

Father is a convicted arsonist. On July 8, 2014, he received a twelve-year prison sentence for setting fire to a house while Mother, her children, and Mother's brother were inside, though Father maintains he did not know Mother and L.D.C. were inside at the time he set the fire.[1] He is currently incarcerated and his sentence is set to expire on July 12, 2025. Father attended the termination hearing telephonically. Father testified that he would be considered for parole in

---

[1] According to Mother, Father faced several criminal charges arising out of the fire, including two counts of child endangerment, four counts of attempted murder, and one count of arson.

January 2020, though he also admitted that the decision to release him on parole was "discretionary."[2]  Father is currently subject to a no-contact order that prohibits him from having contact with L.D.C. until he turns 18.

In June 2018, the Department of Family and Protective Services (the Department) became involved in this case when child A.F.[3] was found wandering unsupervised after midnight one night while Mother worked at a bar in Midland.  The Department learned that A.F., L.D.C., and several other minor children were left unattended at a house while their mothers were working out of town at a bar for several days at a time.  When A.F. was discovered, law enforcement returned the children to Maternal Grandfather because Mother was incarcerated for outstanding traffic tickets once she returned from Midland.  Upon her release, Mother refused to participate in a safety plan that involved Maternal Grandfather.  Mother had been living in a house that was not Maternal Grandfather's house, but following the Department's involvement in this case, Mother was no longer allowed to live at the house where she had been residing, and she then moved in with Maternal Grandfather.

Myra Ruiz, an investigative supervisor with CPS, testified that the children were removed when Mother did not consent to allow Maternal Grandfather to care for the children.  Ruiz described the conditions of Mother's home as being unfit during the initial investigation, saying that "it was dirty, it was trash everywhere, the bathroom was not working, it was overflowed with feces." There was also evidence of drug use at the home, including scales and white powder. On

---

[2] Our review of publicly available Texas Department of Criminal Justice records shows that Father's request for parole was denied on January 14, 2020.  The TDCJ listed the fact that Father had "repeatedly committed criminal episoes that indicate a predisposition to commit criminal acts upon release" and the fact that "the instant offense has elements of brutality, violence, assaultive behavior, or conscious selection of victim's vulnerability indicating a conscious disregard for the lives, safety, or property of others, such that the offender poses a continuing threat to public safety" as the reasons for denying parole.

[3] A.F. is L.D.C.'s half-sister.  At the time of trial, L.D.C. was six and his sister A.F. was seven.  L.D.C. is Father's son, but A.F. has a different father than L.D.C.  This appeal concerns L.D.C.; A.F. is not involved in this appeal.

cross-examination, Ruiz admitted that Father was not present in the home during the course of the investigation and that he was a non-offending parent. Ruiz also stated that the Department initially found fault with Mother for failing to provide an appropriate babysitter with sufficient knowledge on how to care for the children.

Mother's children were initially placed with L.D.C.'s Great Aunt for fourteen days. She testified that at the time, L.D.C. was an "angry child" who was still in diapers and did not know how to use the bathroom. After being placed with Great Aunt, L.D.C. was next placed with a licensed foster parent from June 2019 through April 2019. Foster Parent testified L.D.C. was disruptive in the classroom and would hit other children. Foster Parent further testified that L.D.C. suffered from some development delays, including having problems using the bathroom and some speech issues for which he received treatment. Foster Parent testified that L.D.C.'s speech issues improved with treatment.

L.D.C. was then placed with Paternal Aunt from April 2019 to August 2019, but he was removed at Paternal Aunt's request due to aggressive behaviors directed toward her son and pets, as well as bed-wetting and other bathroom issues. L.D.C.'s latest placement was with a foster-to-adopt home in El Paso, and a caseworker testified L.D.C. was doing well. He was scheduled to be tested for autism. L.D.C. had been prescribed medication for ADHD.

At trial, Mother testified that when the Department became involved with this case, L.D.C. was five years' old but had not been toilet trained, and she admitted that both L.D.C. and his half-sister A.F. had developmental delays, including speech. Mother stated that after being placed in substitute care, L.D.C. became successfully toilet trained. Mother testified that she believed Father's rights to L.D.C. should be terminated and that termination was in L.D.C.'s best interest.

Father testified that during his incarceration, he completed an anger management course; a

3

Voyager pre-release course; a Kairos Inside Weekend Program dealing with substance abuse; on-the-job training for a semiautomatic sewing machine; some GED courses; craft skills and painting courses; construction courses; and an auto specialization engine performance (mechanic) course. Father also offered several sobriety certificates into evidence. Father testified that when he left for prison, he believed that he was leaving his son in a home he thought would be safe. Father further testified that he wanted custody of L.D.C. once he was no longer incarcerated. On cross-examination, Father admitted that his relationship with Mother involved domestic violence that was committed in front of L.D.C, but he denied using drugs or alcohol in the home where Mother and L.D.C. lived. A caseworker with the Department testified that Father had been sent a parenting packet while in prison, but the caseworker could not verify whether Father had completed the packet or not.

On September 16, 2019, the trial court issued an order terminating the parental rights of both Father and Mother. The trial court found that both Father and Mother had (1) knowingly placed or knowingly allowed the child to remain in conditions or surrounding which endanger the physical or emotional well-being of the child under Section 161.001(b)(1)(D) of the Texas Family Code, and (2) engaged in conduct or knowingly placed the child with person who engaged in conduct which endangers the physical or emotional well-being of the child under Section 161.001(b)(1)(E) of the Texas Family Code. Additionally, the trial court found that Father knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition under Section 161.001(b)(1)(Q) of the Texas Family Code. The trial court also found that appointing the Department as L.D.C.'s permanent managing conservator was in the child's best interest.

Father brought this appeal.

## DISCUSSION

In eight issues, Father challenges the legal and factual sufficiency of the trial court's predicate findings on Section D endangerment grounds (Issues Three and Four), Section E endangerment grounds (Issues Five and Six), and Section Q criminal conduct resulting in conviction and confinement for more than two years grounds (Issues Seven and Eight), along with the trial court's finding that termination was in the child's best interest (Issues One and Two).

We find no reversible error in the trial court's judgment.

### *Standard of Review*

The natural right of a parent to the care, custody, and control of their children is one of constitutional magnitude. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985); *see also Santosky v. Kramer,* 455 U.S. 745, 758–59 (1982)(acknowledging that a parent's rights to "the companionship, care, custody, and management" of their children are constitutional interests, "far more precious than any property right"). However, although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id.* Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727

5

S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.—El Paso 2015, dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

We will affirm a parental termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights as well as the finding of best interest. *J.S. v. Texas Department of Family and Protective Services*, 511 S.W.3d 145, 159 (Tex.App.—El Paso 2014, no pet.). When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *Id.* We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *Id.*

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not

reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### *Predicate Grounds*

Because Sections D and E provide predicates for terminating a parent's right to their other children under TEX.FAM.CODE ANN. § 161.001(b)(1)(M), our review of appellate points raising challenges to findings under Sections D or E is mandatory under due process. *See Interest of N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). "When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children." *Id.* at 235; *see also* 237 (holding that it violates due process to not review grounds D and E when those grounds have been presented on appeal). If the court of appeals affirms the termination on either Ground D or Ground E, "it must provide the details of its analysis" and failure to do so violates procedural due process. *Interest of N.G.*, 577 S.W.3d at 237.

Per the Texas Supreme Court's instructions, we will begin our review by focusing on the Section D and E endangerment grounds. If these grounds are sufficient to provide a basis for the trial court's judgment, we need not review the other alternate grounds and may proceed directly to the best interest analysis. *Id.*

### *Endangerment*

Under Subsection D, a trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX.FAM.CODE ANN. § 161.001(b)(1)(D). Under Subsection E, a trial court may order termination of the parent-child relationship if the court finds by clear and

7

convincing evidence the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *Id.* § 161.001(b)(1)(E).

Father maintains that the Department cannot establish Subsection D or E termination grounds on this record. Throughout his brief, Father asks the Court to take into consideration the fact that he is the "non-offending parent;" that at the time the Department's investigation began, L.D.C. was in the custody of Mother; and that it was Mother's wrongful acts that led to the proceedings at bar. He then asserts that in response to the Section D and E endangerment allegations, he should not be held responsible for Mother's action and it would be unfair to impute her actions to him and say he placed or knowingly allowed L.D.C. to be placed with Mother when in actuality, it was a trial court that had placed L.D.C. with Mother when it awarded her custody and limited his paternal rights to L.D.C. even before the investigation began.

The Department counters that the trial court's judgment rested on legally sufficient evidence because Father set fire to the home Child was living in, was convicted for arson, and sentenced to prison, has been incarcerated for the entirety of the case, engaged in domestic violence in front of Child, has a history of drug and alcohol abuse, and was subject to prior court limiting his access to child. We agree with the Department.

Father's argument that he should not be penalized for Mother's actions in failing to adequately supervise the children at the time the Department's investigation began because he was unable to control how Mother handled the children from prison does not take into account all circumstances in this case. As the Department correctly points out, the trial court may consider *all* relevant circumstances in making its termination decision, not merely those circumstances that led to the Department's initial involvement in the case, including conduct that occurred "both

8

before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex.App.—Houston [1st Dist.] 2009, pet. denied).

"Endanger" means "to expose to loss or injury; to jeopardize." [Internal citation omitted]. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Although "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Id.* "It is enough if the youth is exposed to loss or injury or his physical or emotional well-being is jeopardized." *In re P.E.W.*, 105 S.W.3d 771, 777 (Tex.App.—Amarillo 2003, no pet.). Applying this standard, we find there is ample evidence in this record to show that the endangerment predicates were established in Subsection D and E.

First and foremost is Father's criminal conviction for arson. It is uncontested that Father set fire to a house while L.D.C. and Mother were inside. That is direct evidence that Father placed L.D.C in grave physical danger. Even if Father genuinely did not intend to kill Mother, L.D.C., or any of the home's other occupants by setting fire to the house, Father did intend to set the fire, and "intentional criminal activity which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well being of the child." *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex.App.—Amarillo 2001, no pet.). Indeed, Subsection D permits termination "because of a single act or omission." *Interest of R.D.*, 955 S.W.2d 364, 367 (Tex.App.—San Antonio 1997, pet. denied). Setting fire to a house in which L.D.C. was sleeping is an act of arson, standing alone, is enough to justify termination under either Subsection D or Subsection E. Additionally, Mother testified that Father is subject to a previous no-contact order, which also could weigh in favor of an inference that Father previously engaged in a course of endangering conduct. The fact that Father's conduct in committing arson also subjected him to

9

incarceration is another factor that weighs in favor of an endangerment finding, as conduct that subjects a child to the probability of abandonment "because a parent is jailed endangers both the physical and emotional well-being of the child." *Walker*, 312 S.W.3d at 617; *see also In re U.P.*, 105 S.W.3d 222, 236 (Tex.App.—Houston [14th Dist.] 2003, pet. denied)(fact finder could consider "emotional vacuum" created by father's arrest and yearlong incarceration for drug dealing as an endangerment factor). Finally, Father admitted to committing domestic violence in L.D.C.'s presence. "Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In Interest of T.R.L.*, No. 10-14-00290-CV, 2015 WL 1020865, at *5 (Tex.App.—Waco Mar. 5, 2015, no pet.)(mem. op.). Taking these factors in total, we find that the trial court could have found by a preponderance of the evidence that Subsection D and Subsection E predicates were established. The evidence is legally and factually sufficient as to those predicate grounds. Father's Issues Three, Four, Five, and Six are overruled.

Having determined that Grounds D and E rest on legally sufficient evidence and are sufficient, standing alone, to support the trial court's judgment, we decline to address Issues Seven and Eight related to the sufficiency of Ground Q, as that issue is unnecessary to the resolution of this appeal. *See* TEX.R.APP.P. 47.1.

### *Best Interest*

The existence of a predicate termination ground is not enough to allow a trial court to order termination of parental rights. Termination of parental rights must also be in the child's best interest. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 923 (Tex.App.—El Paso 2015, no pet.). Again, reemphasizing his argument that he is the "non-offending parent," Father asserts in Issues One and Two that the trial court's determination that termination of Father's parental rights was in L.D.C.'s best interest did not rest on legally or factually sufficient evidence. We disagree.

10

A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d at 927. There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *Id*. Nine non-exhaustive factors should be considered in our analysis of the best interest issue:

1. the child's desires;

2. the child's emotional and physical needs now and in the future;

3. the emotional and physical danger to the child now and in the future;

4. the parenting abilities of the individuals seeking custody;

5. the programs available to assist those individuals to promote the child's best interest;

6. the plans for the child by those individuals or the agency seeking custody;

7. the stability of the home or proposed placement;

8. the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and

9. any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors").

The Department is not required to prove all of the *Holley* factors as a condition precedent to parental-rights termination. *See In Interest of C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex.App.—Waco 2001, no pet.).

**Child's Desires (Factor #1)**

11

L.D.C. was six years' old at the time of trial. It is undisputed that L.D.C. was not asked what his preference was. This factor is neutral.

**Emotional and Physical Needs (Factors #2)/Emotional and Physical Dangers (Factor #3)**
**/Parental Acts or Omissions Indicating Existing Parent-Child Relationship is Not Proper**
**(Factor #8) and Excuses for Acts (Factor #9)**

The major thrust of Father's argument on appeal, which he reiterates in his best interest analysis, is that he was the "non-offending parent" in the sense that it was not his actions, but those of Mother, that led to the investigation which ultimately culminated in L.D.C.'s removal by the Department. However, when it comes to L.D.C.'s emotional and physical needs and the dangers presented to him, we note Father is incarcerated on arson charges until 2025 for setting fire to a house in which L.D.C. and Mother were present. Father's excuse that he did not know L.D.C. and Mother were in the house at the time he set it ablaze is not persuasive. Father also admitted to committing domestic violence against Mother in front of L.D.C.

While Father's criminal conduct may not have directly resulted in the initiation of the Department's investigation, we also cannot ignore the evidence of his criminal conduct in assessing whether the trial court erred in conducting its *Holley* analysis. The arson conviction and the previous domestic violence factors weigh heavily against Father and heavily in favor of the trial court's finding that termination was in the child's best interest. *See In re K.B.*, No. 03-09-00366-CV, 2010 WL 5019368 (Tex.App.—Austin Dec. 9, 2010, no pet.)(mem. op.)(explaining that statutory endangerment findings inform a trial court's best interest analysis and that "undisputed evidence of danger" to a child is especially relevant).

**Father's Parenting Ability (Factor #4)**

We next turn to the issue of Father's parenting ability. Father points to the fact that since he has been incarcerated, he has taken certain self-improvement classes. This factor weighs in

12

favor of Father and constitutes some evidence of parenting ability and desire. However, as the Department points out, Father's incarceration itself creates a large uncertainty factor while L.D.C. is at a tender age and in need of special care, and a child's need for permanence is a "paramount" consideration in termination proceedings. *See In re M.D.S.*, 1 S.W.3d 190, 200 (Tex.App.—Amarillo 1999, no writ). Given the fact that Father's prison term is not set to expire for nearly five more years, this tips the balance in favor of the Department's position as to this factor.

**Plans for the Child by Individual Seeking Custody/Stability of Proposed Placement (Factor # 6-7)**

We address the *Holly* factors dealing with L.D.C.'s future placement together. Father stated a desire to seek custody of L.D.C. upon his release from prison, but that release is not scheduled until 2025. He had proposed in the alternative that L.D.C. be placed with Paternal Aunt, but as the Department points out, Paternal Aunt had relinquished custody of L.D.C. due to his disruptive behaviors. By contrast, a Department caseworker testified that L.D.C.'s current placement provided him with stability, support, and a good environment. On balance, we find that this factor leans in favor of the Department.

**Summary**

In balancing the *Holley* factors, we find that the trial court's determination that termination was in L.D.C.'s best interest rests on legally and factually sufficient evidence. Father's Issues One and Two are overruled.

**CONCLUSION**

None of Father's appellate points are meritorious and find no reversible error on this record. The judgment of the trial court is affirmed.

February 26, 2020

YVONNE T. RODRIGUEZ, Justice

13

Before Rodriguez, J., Palafox, J., and McClure, Senior Judge
McClure, Senior Judge (Sitting by Assignment)